Grafton,
July 2, 1947. } No. 3674.

STATE *v.* SIDNEY H. SKAFF.

*Robert A. Jones*, County Solicitor (by brief and orally), for the State.

*McLane, Davis & Carleton (Mr. Stanley M. Brown* orally), for the respondent.

DUNCAN, J. There must be a new trial because of inadequacies in the instructions to the jury, to which the Court's attention was called by the respondent's request for additional instructions. The instructions accurately placed before the jury the essential elements of the offense charged: "But here are the elements. You must find first, before you can find him guilty, that he intended to defraud; second, that he made a false representation, false pretense in regard to some fact; third, that he wrongfully obtained property of Mrs. Uline; and fourth, that if it hadn't been for his false representation, Mr. Rennie wouldn't have given him the money." *State* v. *King*, 67 N. H. 219. However, by other instructions the principles stated were so applied to the evidence that the jury might reasonably have understood the

issue of intent to defraud to be dependent upon the determination of the issue of false pretense, or upon that and evidence concerning transactions with persons other than the Ulines, without regard for evidence relied upon by the respondent tending to negative such intent.

Over the respondent's objection and subject to his exception, for the limited purpose of proving intent to defraud, the State was permitted to introduce evidence concerning the respondent's dealings with the witnesses Linthwaite and Gosselin. The evidence was competent, so far as it tended to accomplish the purpose to which its use was limited. *Perkins* v. *Prout*, 47 N. H. 387; *Land Finance Corporation* v. *Company*, 83 N. H. 518; *State* v. *Hinton*, 84 N. H. 75. The evidence concerning the Gosselin transaction had no tendency, of itself, to establish fraudulent intent. While the transaction with Linthwaite was more like that with the Ulines, it involved no element of false pretense, and tended to establish intent to defraud only by inference from evidence that advance payment was secured and that the respondent was not financially responsible at the time, a fact which other evidence of checks dishonored by the bank also tended to establish. While the latter evidence was first admitted for a limited purpose only, the respondent's evidence that the checks were made good went beyond this purpose, and made the State's evidence competent upon the issue of intent.

Although the testimony regarding the Linthwaite and Gosselin transactions was objected to and exception taken to its admission, no motion to strike was made after its reception. It can hardly be held to have been so plainly incompetent and prejudicial as to have presented an occasion for exclusionary action by the Court of its own motion. As was pointed out in *Commonwealth* v. *Jeffries*, 7 Allen (Mass.) 548, 568-569, the evidence was competent so far as it tended to show that "the necessary consequence of [obtaining funds in advance of performance] was to deprive the [purchaser] of [her] property without recompense or the chance of payment, and leads to the just and almost unavoidable inference that it was done with an intent to defraud." It was competent "for the purpose of showing the natural and necessary consequence of his act, which the law presumes he intended." *Id.*, 569. See also, *State* v. *Call*, 48 N. H. 126.

The state insisted that the respondent's intention was to be determined as of the time when the money was obtained from the bank; and as he might properly do, the solicitor argued that events after November 2 were of no consequence, and offers to carry out the con-

tract made afterwards would not operate to "wipe out the commission of the crime itself." 2 Burdick, Law of Crime, s. 649. Inferences of intent to defraud were met by the respondent's denial of any agreement for postponed payment, and of any false pretense. To show consistent good faith, and the improbability of any agreement for deferred payment, he relied upon the evidence of the terms of the note signed by Mrs. Uline, that of the impossibility of performance due to shortages, and the proof of partial performance after receipt of payment, both as to labor and materials.

The instructions first quoted, specifying the elements of the offense, were preceded by an instruction containing no reference to criminal intent: "If you believe that Mr. Sidney Skaff went into the bank that day and obtained $450 of Mrs. Uline's money by a false pretense to Mr. Rennie, it's your duty to find him guilty, if you believe that and believe it beyond a reasonable doubt."

Again, without indication that a finding of intent to defraud Mrs. Uline was a prerequisite to conviction, the jury was told: "If he went in there intending to defraud, made a false representation and got $450 of somebody else's money, in this case Mrs. Uline's, why, he is guilty; if he didn't, he is not."

Finally, after instructions to consider the evidence concerning the transactions with others upon the question of whether "he had a fraudulent intent," and after instructions upon its duties generally, the jury was told in summary: "If you believe beyond a reasonable doubt that Sidney Skaff, intending to cheat Mrs. Uline, got $450 worth of her money from Mr. Rennie, which he wouldn't have given to him if there hadn't been a false pretense, it's your duty to find a verdict of guilty. If you don't believe that, it's your duty to find a verdict of not guilty." No reference was made in the charge to the claims of the respondent, or to the evidence concerning partial performance of the contract after the money was obtained, or its relation to the issue of intent.

At the conclusion of the charge, counsel for the plaintiff made the following request: "Mr. Tremblay: I would like to have the instruction if the respondent obtained moneys for which he intended and attempted to furnish goods and materials, that is not obtaining money under false pretenses." While not phrased with nicety, this was in substance a request for an instruction that if the money was not wrongfully obtained with intent to defraud, the offense charged was not committed.

While prudence on the part of trial counsel for the respondent

might have dictated the submission of written requests in accordance with the usual practice, yet the respondent was entitled to rely upon the Court to "fully and correctly instruct the jury as to the law applicable to the case." *Burke* v. *Railroad*, 82 N. H. 350, 361. The nature of the defense was obvious, and while the Court had some discretion in the matter, (*Colby* v. *Lee*, 83 N. H. 303, 310), the respondent might reasonably expect that instructions would be given, not only as to the elements of the alleged offense in the abstract, but also in application of the law to the evidence and the claims of the parties with respect to them, including intent to defraud. By his request counsel called attention to omissions from the charge in season for correction of error, and to the denial of his request an exception was properly taken. *Perlman* v. *Haigh*, 90 N. H. 404.

In support of the request, counsel said: "I believe the Court instructed the jury that the whole question is if the respondent obtained money at the bank on November second by false pretenses, that is all you need to find to call him guilty. I think that from the general instructions of the Court, it might be interpreted that that is what the Court intended for the jury."

We think this criticism of the charge was meritorious. While the elements of the offense were described with technical accuracy, some of the various applications of the law to the facts left it open to the jury to infer that if the money was obtained by false pretense, the requisite intent was necessarily present. In this respect the jury was not " 'fully and correctly' instructed." *Colby* v. *Lee, supra.*

The case was complicated by the fact that while the false representation alleged was to Rennie, the criminal intent alleged was the intent to defraud Mrs. Uline. This was nowhere explained to the jury, and only once referred to. The distinction was important and in the absence of an explanation the jury may well have understood that a misrepresentation to Rennie for the purpose of obtaining funds then otherwise unobtainable, necessarily demonstrated the required intent to defraud. Yet upon the evidence it was a permissible finding that the false pretense was made merely for the purpose of obtaining the money in violation of the bank's requirement that the contract first be performed. It was the claim of the agreement with the Ulines that the contract be performed before payment which gave rise to the inference of an intent to defraud Mrs. Uline, and it was open to the jury to disbelieve the testimony that such an agreement was made.

At no time did the charge point out that a finding of false pretense

was possible without a finding of intent to defraud, or what verdict was required in such a case. The jurors were not told that if they believed that there was no intent to defraud Mrs. Uline or that under the agreement the respondent was entitled to the money in advance, he must be acquitted. To some such instruction the respondent was fairly entitled. *Bjork* v. *Company*, 79 N. H. 402, 406.

It is true that the jurors were told in substance that if the various elements of the offense were established, the respondent was guilty; if not, he was not guilty. This was likely to convey the impression that disbelief of the State's claims as to all elements of the offense was a prerequisite to acquittal, when as a matter of law disbelief of one was sufficient. The effect of the several instructions by which the nature of the requisite intent was left wholly undefined was not necessarily overcome by the fleeting reference to "intent to cheat Mrs. Uline" contained in the concluding instruction. It is impossible to say that the jury accepted this instruction and was exclusively governed by it. *Cohn* v. *Saidel*, 71 N. H. 558, 571.

The respondent's request called attention to the defect in the charge even if not restricted to the matter of intent at the time the money was obtained. It was also calculated to call attention to the respondent's evidence which bore upon intent, and which in fairness should have been referred to in the charge, as was the evidence relied upon by the State. It is true that if it were found that the money was "obtained wrongfully" as against Mrs. Uline, with intent to defraud her (*State* v. *King, supra*), evidence of partial performance thereafter was not competent to show an intention at the time the offense was committed, to repay at a later date by performing the contract. Such an intention could not make rightful the act of cheating Mrs. Uline by false pretense. *Commonwealth* v. *Coe*, 115 Mass. 481; 2 Burdick, Law of Crime, *supra*. But the claim of an agreement for deferred payment was properly met by the evidence of the note given on November 1, ostensibly drafted for immediate discount, and of partial performance of the contract by the respondent after the money was obtained, and before any claim of wrongful conduct was asserted. Such evidence supported the respondent's position that he had acted in good faith, according to the agreement with Mrs. Uline as he claimed it to be, and tended to throw doubt upon the probable existence of an agreement such as she claimed, under which he would not have been entitled to payment. It bore upon the issue of whether the respondent acted with criminal intent, and was as much entitled to consideration by the jury, under appropriate in-

structions, as was the evidence relied upon by the State. *Commonwealth* v. *McDuffy*, 126 Mass. 467; *State* v. *Hintz*, 200 Wis. 636; Underhill's Criminal Evidence (4th *ed.*) *s.* 698.

Since the instructions did not fairly apply the law to the facts, and failed to place before the jury an explanation of the nature of the required criminal intent with sufficient clarity to make misunderstanding improbable, there must be a new trial. *Cohn* v. *Saidel*, *supra; Simoneau* v. *Railway*, 78 N. H. 363; *West* v. *Railroad*, 81 N. H. 522, 531; *Davis* v. *State*, *ante*, 321.

*New trial.*

BLANDIN, J., did not sit: the others concurred.