Merrimack
No. 7643
No. 7644
No. 7645

THE STATE OF NEW HAMPSHIRE

v.

WILLIAM BELKNER, JAAN LAAMAN, RICHARD DUNN

May 31, 1977

464

*David H. Souter*, attorney general, and *James L. Kruse*, assistant attorney general (*Mr. Kruse* orally), for the state.

*John C. Emery*, of Manchester, by brief and orally, for defendant Belkner.

*William H. Kelley* and *John Czecuik*, of Manchester (*Mr. Czecuik* orally), for defendant Laaman.

*J. Gilbert Upton*, of Concord, by brief and orally, for defendant Dunn.

GRIMES, J. These appeals arise out of the Christmas Day 1975 riot at the New Hampshire State Prison (hereinafter "prison"). Defendants were all tried by jury and convicted of riot as a class B felony pursuant to RSA 644:1 I(a) and RSA 644:1 IV.

Defendants raise a multitude of issues claiming that they did not receive a fair trial. All questions of law were reserved and transferred by *Keller*, C.J. For purposes of discussion, these issues are grouped in the following categories: (1) motions to quash and sever; (2) admissibility of Belkner's conversation with inmate West; (3) motions for mistrial; (4) argument and instructions; (5) new trial and motions to dismiss.

The following facts could be found from testimony given at trial. On Christmas Day in 1975 there was minimal staffing at the prison, a fact generally known by the inmates. The inmates arrived five minutes earlier than usual for lunch, smoked at lunch contrary to prison rules and normal routine and sat in locations they did not normally sit in. Dunn and Laaman sat near the front of the dining hall near the door leading to the cell block, contrary to their regular practice. The inmates remained in the dining area upon finishing their lunches rather than returning to their cells.

Early in the meal Dunn told inmates surrounding him to be sure the door to the cell block could not be locked. It was generally known by the inmates that when there was trouble the door to the cell block was locked and tear gas was fired into the dining area.

Bonin, the officer in charge, did not have access to the cell block as the doorway was blocked by several inmates.

Near the end of the dining period, Dunn rose and spoke to Bonin and the 146 inmates present. Dunn complained that the inmates wanted the prisoners in punitive status to come out and have Christmas dinner. He further stated that he was fed up with the prison rules and that the inmates would not leave the dining room until the warden came down to speak with them. These and other messages were relayed to the warden by Officer Rice, a guard.

Dunn made several more speeches to the crowd conferring on occasion with Laaman. The inmates responded to these speeches with loud roaring and banging. Several inmates made taunting remarks to the guards present. Officer Rice returned with messages from the warden. The warden stated that he had arranged for the prisoners in punitive status to have Christmas dinner, that the inmates were to return to their cells, and that the warden would not come to the dining room. Dunn responded that this was not good enough and they wanted the warden down. The warden relayed a message to the effect that he would speak with respesentatives of the population but that he would not come to the dining area. The warden suggested Dunn and Laaman as representatives as they had been identified to him as the leaders. Laaman hollered to Dunn that if he went up to see the warden he would probably not be coming back. Dunn then turned to the crowd and asked if they wanted him to go up alone to which they responded in the negative with more shouting and banging.

At this point the atmosphere was very excited and Bonin feared for himself and the staff in the kitchen. Various inmates had threatened guards with physical violence. Bonin requested permission from Dunn to leave with the kitchen staff. Dunn said they could go. As Bonin and the staff filed out between lines of inmates, the inmates hummed the death march. Before they reached the doorway, a loud crash was heard in the cell block and inmates surged toward the door. A large construction staging had been pulled down. A guard and the prison steward were hit and injured. Tear gas was then fired into the area and the inmates were eventually evacuated. Extensive property damage was done to the cell block and kitchen from fires that had been started in the officers' cabinets.

## I. *Motions to Quash and Sever*

Defendant Belkner first contends that the trial court erred in denying his motion to quash the indictment against him. Belkner alleges that the indictment is insufficient in that it charges him with more than one offense and he could not properly assess the charges against him.

The indictment against Belkner precisely tracks the language of RSA 644:1 I(a). In addition it supplies underlying factual allegations so that Belkner was specifically apprised of his alleged offensive conduct. Belkner's confusion apparently arises out of language in the indictment relating to RSA 644:1 IV. RSA 644:1 IV raises the status of riot as defined by RSA 644:1 from a misdemeanor to a class B felony when personal injury or property damage results from the conduct.

RSA 644:1 IV is not an offense separate from RSA 644:1 I, but rather is an aggravated status of that same offense. The indictment specified sufficient facts so that defendant was apprised that he was being indicted for riot as a class B felony. The indictment informed Belkner with sufficient definiteness to enable him to prepare a defense and therefore the court did not err in denying Belkner's motion to quash. *State v. O'Neill,* 105 N.H. 15, 191 A.2d 528 (1963); *State v. Hoyt,* 114 N.H. 256, 319 A.2d 286 (1974). The fact that defendant was charged in the conjunctive while the statute is phrased in the disjunctive does not invalidate the indictment. Only one offense, "riot," was charged and judgment will bar any future trial of the defendant for riot. *State v. Harlan,* 116 N.H. 598, 364 A.2d 1254 (1976).

Defendants Dunn and Laaman argue that the court erred in denying their motions to sever *State v. Belkner* from *State v. Dunn* and *Laaman.* The thrust of defendants' argument on this point is that Belkner's case involved physical injury to the prison steward while their cases did not involve infliction of physical injury. They allege that introduction of this evidence against Belkner was highly inflammatory to the jury and that their cases were unrelated to that of Belkner.

RSA 644:1 IV reads in pertinent part: "Riot is a class B felony if, in the course of and as a result of the conduct, any person suffers physical injury . . . ." This statement taken in conjunction with the language of RSA 644:1 I, the offense with which all three of the defendants were charged, makes it clear that Dunn

and Laaman need not have personally engaged in the actual acts of physical violence to be prosecuted for a class B felony under RSA 644:1 IV. Therefore, as Dunn and Laaman correctly admitted at the hearing on their motions to sever, this evidence was also admissible against them as well as against Belkner. We, therefore, cannot see how the mere joinder of the Belkner case with that of Dunn and Laaman was prejudicial to them. Furthermore, all defendants were charged solely with violation of RSA 644:1 I(a) and for the most part the same witnesses were to be called for both cases. The charges all arose out of the same event and in the interest of efficiency it was proper for these cases to be consolidated. The court did not abuse its discretion in denying the motions to sever. *State v. Chickering*, 97 N.H. 368, 89 A.2d 206 (1952); ABA Project on Minimum Standards for Criminal Justice, Joinder and Severance § 2.3 (Approved Draft, 1968).

II. *Admissibility of Belkner's Conversation with Inmate West.*

■ Defendants all claim that a conversation which took place between inmate West and defendant Belkner, which was admitted over objection, was so prejudicial that defendants were denied a fair trial. They further claim that the conversation was hearsay and inadmissible as such.

Roland Fleury, a paroled inmate, testified at defendants' trial that he had seen someone holding a pipe over the prison steward's head. When asked who was holding the pipe, Fleury stated that he could not reveal the identity of the person for "personal reasons, very strong reasons." In chambers, Fleury stated that a threat against his life had been conveyed to him by his sister from one Tweedel, a guard at the prison. Tweedel was called in chambers and stated the nature of the conversation to the court. The court decided that the testimony was admissible as conduct indicative of a guilty frame of mind. Tweedel was then allowed to testify in front of the jury, over objection, to the following conversation which he overheard while on duty at the prison on December 28, 1975:

West: They slipped Roland (Fleury) out of prison and he ratted us out.

Belkner: We've got plenty of friends at all the joints and we'll get letters out and find out where he's at.

West: We'll find him and kill the little bastard.

Defendants concede that attempts by an accused to threaten witnesses or prevent them from testifying are admissible against the accused in evidence. 2 J. Wigmore, Evidence §§ 273, 277, 278 (3d ed. 1940); 1 C. Torcia, Wharton's Criminal Evidence § 217 (13th ed. 1972); Annot., 62 A.L.R. 136 (1929). Defendants claim, however, that in order to be admissible the threats must be linked to Belkner and that there is no evidence to show that Belkner adopted West's threats. We are of the opinion that Belkner's own words could have been found by the court to be threatening to the witness and were admissible as such. *See* 2 J. Wigmore *supra.*

At the conclusion of this testimony the court instructed the jury that the conversation was to be considered only in the Belkner case and that it 'was not evidence against Dunn and Laaman. These limiting instructions properly removed any prejudice to Dunn and Laaman.

■ The court was informed in advance as to what Tweedel's testimony was to be. The court allowed defense counsel to make their objections and argue them at that time. At the conclusion, the court determined that the testimony was admissible and that its value outweighed any prejudice to Belkner. *State v. Black,* 116 N.H. 836, 368 A.2d 1177 (1976). We find that the record supports the determination of the court.

The statements were not hearsay because they were not offered to prove any fact contained therein but only to show that the statements were made. C. McCormick, Law of Evidence §§ 246, 249 (2d ed. 1972); 6 J. Wigmore, Evidence § 1790 (Chadbourn rev. 1970).

III. *Motions for Mistrial*

Shortly after the trial commenced, the *Manchester Union Leader* and the *Concord Monitor* published articles relating to defendants. The article in the *Concord Monitor* stated that defendants could receive up to seven years if convicted and included a picture of defendants. The article in the *Union Leader* described the damage done to the prison, and on an inner page defendants' criminal records were set forth.

Although the court had instructed the jurors not to read the newspapers or converse about the case, it polled the jurors relative to these articles. Several of the jurors knew of the existence of articles in the papers, but only one juror had read any article

and this juror was dismissed by the court. The court then ordered the jury sequestered for the remainder of the trial.

 Determination of jury prejudice from news articles is a matter within the discretion of the trial court. *State v. Booton*, 114 N.H. 750, 758, 329 A.2d 376, 383 (1974). Here the jury was polled and the only juror who might have been prejudiced was dismissed from the case. Defendants can hardly claim prejudice from the mere fact that the jurors knew there were articles in the newspapers. We find the court handled the problem in a manner completely consonant with accepted standards. ABA Project on Minimum Standards for Criminal Justice, Fair Trial and Free Press § 3.4(b) (Approved Draft 1968).

All of the defendants argue that the court erred in not declaring a mistrial when the warden characterized Dunn and Laaman as ringleaders while responding to a question from counsel for defendant Guay, a defendant who was also tried with Belkner, Dunn and Laaman but acquitted. The statement made by the warden was, "I said I would not go down but that I would speak to representatives, including those that had been identified as the ringleaders to me of this particular revolution—Laaman, Dunn—." Counsel for Laaman objected to the statement and moved to strike the answer. The court sustained the objection and the answer was stricken. The court admonished the witness to make no further statements regarding what was told him about who were ringleaders. When charging the jury the court instructed that the jury was to completely disregard any testimony that had been stricken from the record.

 The defendants claim that this answer was hearsay, unresponsive, that it was for the jury to determine who was responsible for the sit-in, and that no amount of instruction could eradicate the prejudice caused by the statement. A mistrial is to be declared where, "the existence of some circumstances . . . indicates that justice may not be done if the trial continues to verdict." *State v. Booton*, 114 N.H. 750, 757, 329 A.2d 376, 382 (1974). The trial court found that such circumstances did not exist in denying the motion and upon review of the record we find no error in this determination.

IV. *Argument and Instructions*

 Defendant Laaman complains that the prosecutor's closing argument regarding Laaman's knowledge of the "game

plan" was so devoid of evidentiary support that it was unduly prejudicial. However, a reading of the record discloses that no objection was made by counsel for Laaman to this nor to any other part of the prosecutor's argument. It is the policy of this state to require timely objections so that corrective measures may be taken during trial. *See State v. Lemire*, 115 N.H. 526, 534, 345 A.2d 906, 912 (1975); *State v. Breest*, 115 N.H. 504, 505–06, 345 A.2d 391, 392 (1975). As no objection was raised and reserved below this issue is waived. *Id.; State v. Lemire*, 115 N.H. at 534, 345 A.2d at 912. Furthermore, the court cautioned the jury that they were to take their own recollection of the evidence and that the arguments were not statements of fact.

Defendant Laaman claims that the court erred in instructing the jury regarding the criminal liability of an accomplice, and defendant Dunn claims that the court erred in instructing the jury on the elements of the offense of riot. We note that Dunn proposed no instruction on riot so that the court could have charged something more favorable to him. Here again, neither defendant objected to the instructions either during the charge or immediately thereafter. Not having raised and preserved these objections below defendants cannot raise them here for the first time. *State v. Taschler*, 116 N.H. 218, 221, 356 A.2d 697, 699 (1976).

Defendants Dunn and Laaman argue that the court's instruction on reasonable doubt was plain error and denied defendants a fair trial. Defendants object to that portion of the court's instruction which states, "It does not mean a trivial or a frivolous or a principal doubt nor one which can be readily or easily explained away but rather such a strong and abiding conviction as still remains after careful consideration of all the facts and arguments against it. . . ." They rely on *United States v. Flannery*, 451 F.2d 880 (1971), where the court there criticized a similar charge.

The very argument made by defendants was rejected by this court in *State v. Black*, 116 N.H. 836, 368 A.2d 1177 (1976). "A single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146–47 (1973). The court here gave a page and a quarter of instructions on reasonable doubt using a variety of descriptions which taken in their totality clearly conveyed the correct concept of reasonable doubt. *State v. Black*,

116 N.H. 836, 368 A.2d 1177 (1976); *State v. Slade,* 116 N.H. 436, 362 A.2d 194 (1976); *State v. Booton,* 114 N.H. 750, 329 A.2d 376 (1974).

### V. *New Trial and Motions to Dismiss*

Defendant Laaman next complains that there was insufficient evidence for him to be found guilty of riot pursuant to RSA 644:1 I(a) and that the court erred, therefore, in denying his motions for new trial and to dismiss.

Laaman was charged with promoting and facilitating the issuance of demands to the prison administration as well as threats directed at prison guards present in the prison dining area on December 25, 1975. The record shows that Laaman was present in the dining area and conferred with Dunn on several occasions during the course of Dunn's speech and threats. When prison guard Rice returned from the warden's office to the dining area to bring the warden's response to inmates' demands, Laaman asked Rice what the hell he was doing there. Further, Laaman loudly cautioned Dunn against going to meet with the warden to present inmates' grievances stating that if Dunn went up there he would probably not return. Laaman refused to leave the dining area at the warden's request and made no effort to disassociate himself from the scene when Dunn announced that the inmates would take a stand against any invasion of the "goon squad" and that some of the inmates might be killed. There was also some evidence that Laaman was knowledgeable as to the inmates' "game plan." It could be inferred from his statements and conduct that his conferences with Dunn were for the purpose of assisting him.

It is well settled in this state that when reviewing evidence for the purposes of a motion to dismiss, the evidence must be taken " 'in the light most favorable to the State with all reasonable inferences therefrom.' *State v. Canney,* 112 N.H, 301, 303, 294 A.2d 382, 383 (1972)." *State v. Gilbert,* 115 N.H. 665, 666, 348 A.2d 713, 714 (1975). We cannot say in reviewing the record that using this standard the jury could not have found Laaman guilty beyond a reasonable doubt.

The granting of a new trial is a question of fact for the trial court and its ruling will not be disturbed unless it appears that it resulted from mistake, partiality, or corruption. *See State v. Wren,* 77 N.H. 361, 92 A. 170 (1914). Laaman was heard by the court on his claim and it was rejected by the court which

thereby implicitly found that the defendant's conviction was not unjust. *Id.; State v. Lemire,* 115 N.H. 526, 345 A.2d 906 (1975). There was no error in denying Laaman a new trial.

The final claim made by defendants is that the court erred in denying their motion for new trial and to poll the jury. The motion is based on the following allegations. The jury, having been sequestered, asked permission to work on Saturday, May 29, and on Monday, May 31, which was Memorial Day, a holiday. Permission was granted and the jury worked on both days. Defendants conclude from this that the jury was exhausted. On Sunday, May 30, at 10:20 P.M., one of the jurors died which defendants claim further exhausted and demoralized the jurors. Dunn claims that one of the attorneys in his counsel's firm personally knew one of the jurors. Upon being approached, this juror stated that another juror had had a strong conviction that defendants were innocent. Defendants conclude that this juror yielded her conviction from her exhaustion and shock at the death of a fellow juror.

The court held a detailed hearing on this motion. The sheriff and two deputies who supervised the jurors testified that the jury had been exceedingly good about having to be sequestered. The sheriff testified that the jury wanted to continue to work on the case on Saturday and Monday because they were "into" the case. He also testified as did the deputies that while the jurors were saddened at the death of a fellow juror the jurors appeared otherwise unaffected by the death.

In our opinion the court correctly found that the defendants' claims were unsubstantiated by the evidence. Polling of the jury is a matter in which the trial court has broad discretion. *LeClerc v. Gray,* 112 N.H. 430, 298 A.2d 116 (1972); *Bothwick v. LaBelle,* 115 N.H. 279, 339 A.2d 29 (1975). Denial of such a motion will be overturned only for abuse of discretion and we find no abuse here. *Id.; State v. Mann,* 112 N.H. 412, 297 A.2d 664 (1972).

*Exceptions overruled.*

All concurred.