Rockingham
No. 78-149

THE STATE OF NEW HAMPSHIRE

v.

MARK C. WENTWORTH

December 6, 1978

*Thomas D. Rath*, attorney general, *John C. Boeckler, Richard B. McNamara, Richard B. Michaud* and *Peter W. Heed*, assistant attorneys general, and *Peter W. Mosseau*, attorney, by brief, for the State.

*Upton, Sanders & Smith*, of Concord, and *Eric D. Blumenson*, of Boston (*Robert Upton II* orally), for the defendant.

*H. Jonathan Meyer*, of Concord, by brief and orally, for the New Hampshire Civil Liberties Union, amicus curiae.

GRIMES, J.  This criminal trespass case presents important issues concerning jury instructions on reasonable doubt, the supervisory function of this court over the trial courts of New Hampshire, and jury instructions on the elements of criminal trespass under RSA 635:2. Defendant raises four questions. This opinion, however, deals with only three; the fourth is fully addressed in the companion case of *State v. Dorsey*, 118 N.H. 844, 395 A.2d 855 (1978) (availability of the competing harms defense).

The issues to be decided are first, whether the trial court committed reversible error in instructing the jury that a reasonable doubt means "a strong and abiding conviction that still remains after a careful consideration of all of the evidence"; second, whether the court erred in instructing the jury on the elements of criminal trespass; and third, whether the court abused its discretion in sentencing the defendant to six months, two months suspended, in the house of correction. We hold that no error was committed.

The pertinent facts are these. The defendant was arrested along with about 1,400 other protesters at the May 1977 occupation of the Seabrook Nuclear Power Plant site. He was charged with the crime of criminal trespass, RSA 635:2, and was convicted in the District Court for the Town of Hampton. Defendant was fined $100, sentenced to fifteen days in the house of correction and appealed his conviction to the superior court. A jury trial resulted in a verdict of guilty, and he excepted to various rulings and instructions, and also to the increase of his sentence. All issues of law were reserved and transferred by *Mullavey, J.*

I. *Jury Instruction on Reasonable Doubt*

The defendant challenges the constitutionality of the jury instruction on the reasonable doubt standard given in his trial. The actual charge given follows:

> Under our system of justice, which has been time-tested, . . . every person accused of crime who walks into a courtroom is presumed to be innocent. The defendant in a criminal case has no burden of proving anything.
>
> What is this presumption of innocence? Until such time as the State proves beyond a reasonable doubt all of the essential allegations contained in the complaint, the defendant is presumed to be innocent.
>
> I just used the phrase "reasonable doubt." Under our system of justice, we do not require that the State prove their case to a mathematical certainty, *nor do we require that the State remove all slight or frivolous doubt from your minds,* but before a verdict of guilty can be returned in any case by a jury, all reasonable doubt must be removed by the evidence which you have heard presented by the State. And once again, upon any issue which you have to determine in this case, you can consider the evidence as you heard it from any witness, no matter who produced it.
>
> In December of last year, the State of New Hampshire Supreme Court decided a case called State v. Black [116 N.H. 836, 368 A.2d 1177 (1976)], and that case probably has as good a definition of what reasonable doubt is as any I've seen. In that case, our Supreme Court defined a reasonable doubt as follows:
>
> *"A reasonable doubt can be defined as a strong and abiding conviction that still remains after a careful consideration of all the evidence '—*a strong and abiding conviction—' but where our belief in a fact is so uncertain that we would hesitate to act upon the strength of it to undertake something of importance and seriousness equal to this case, then there is reasonable doubt." (Emphasis added.)

Defendant contends that the recent First Circuit opinion of *Dunn v. Perrin*, 570 F.2d 21 (1st Cir. 1978), *cert. denied*, 98 S. Ct. 3102 (1978), mandates a finding of reversible error based upon the trial court's use of the phrase "a strong and abiding conviction." We disagree with the defendant's position for two reasons: first, we find the present jury instruction distinguishable from that held invalid in

*Dunn v. Perrin;* and second, we are convinced that the First Circuit is in error on this particular point.

In the cases of *State v. Black*, 116 N.H. 836, 368 A.2d 1177 (1976), and *State v. Belkner*, 117 N.H. 462, 374 A.2d 938 (1977), this court refused to find reversible error in jury instructions containing, among others, the questioned definition of reasonable doubt. In both cases, this court made it clear that it was on the basis of the entire charge that we found no reversible error. *State v. Belkner*, 117 N.H. at 471, 374 A.2d at 944; *State v. Black*, 116 N.H. at 838, 368 A.2d at 1179. Both cases, moreover, quoted the Supreme Court of the United States to the effect that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146–47 (1973); *accord, United States v. Park*, 421 U.S. 658, 674 (1974). In *Dunn v. Perrin*, 570 F.2d 21 (1st Cir. 1978), *cert. denied*, 98 S. Ct. 3102 (1978), the defendants from the two New Hampshire cases sought relief by petitions for habeas corpus in the federal district court, but the district court agreed with this court and denied the requested relief. On appeal, the Court of Appeals for the First Circuit reversed, holding that the instruction given contained three erroneous definitions of the reasonable doubt standard.

The court of appeals was quite specific as to its perceived need for a reversal:

> Here reasonable doubt was improperly defined three times. This is thus not a technical error appearing in "artificial isolation," or one that was cured by an otherwise proper charge. The cumulative effect of the three errors was to obfuscate one of the "essentials of due process and fair treatment."

*Dunn v. Perrin*, 570 F.2d at 25 (citations omitted).

The jury instruction held invalid in *Dunn v. Perrin* defined reasonable doubt (1) as "doubt as for the existence of which a reasonable person can give or suggest a good and sufficient reason," (2) as "a strong and abiding conviction as still remains after careful consideration of all the facts and arguments," and (3) as a standard requiring proof to a moral certainty. Such instructions have been used in this State for decades without challenge. The jury instruction in the present case, however, included only the second of those three definitions.

It is the opinion of this court that the *Dunn* case must be limited to its facts. The First Circuit twice emphasized that its decision was based upon the cumulative effect of the three reasonable doubt

definitions. Aside from the earlier-quoted language, the First Circuit opinion states: "[T]he passage defining that critical concept contained no fewer than three different misstatements, ranging from the dubious to the patently erroneous. With this linchpin so weakened we cannot label the errors harmless beyond a reasonable doubt." *Dunn v. Perrin*, 570 F.2d at 23.

We now hold that considering the charge as a whole the instruction given in the present case is not such error as to require a reversal. Even assuming that the defendant is correct in his assertion that the *Dunn* case is controlling on this court, we hold that, on its facts, it is not controlling in this case.

This court further disagrees with the contention of the defendant and the First Circuit that the language "a strong and abiding conviction as still remains after careful consideration of all the facts" works a reversal of the burden of proof. The defendant argues strenuously that this definition, "[i]nstead of requiring the government to prove guilt, . . . called upon [the defendant] to establish doubt in the jurors' minds." *Dunn v. Perrin*, 570 F.2d at 24. We are unable to see how this is so. The definition given by the trial judge in the present case simply contrasts a reasonable doubt with one that is slight or frivolous. The judge stated: "[N]or do we require that the State remove all *slight or frivolous doubt* from your minds, but . . . *all reasonable doubt* must be removed by the evidence which you have heard presented by the State." (Emphasis added.) The judge then attempted to define the elusive standard of reasonable doubt. Taken in context, we cannot agree that the burden of proof was shifted to the defendant. Rather than placing the burden on the defendant to create the doubt, the instruction required the State to remove it.

The charge plainly stated that "[t]he defendant . . . [had] no burden of proving anything." The charge also made it clear that the burden was on the State to prove each element of the offense beyond a reasonable doubt. These repeated admonitions to the jury undermine any argument that the "strong and abiding conviction" language shifted the burden of proof to the defendant. Taken in its entirety the instruction "conveyed the correct concept of reasonable doubt." *State v. Belkner*, 117 N.H. 462, 471, 374 A.2d 938, 944 (1977); *State v. Black*, 116 N.H. 836, 368 A.2d 1177 (1976). *See also Cupp v. Naughten*, 414 U.S. 141, 146–47 (1973). In addition, even assuming that it was error to instruct the jury in the manner selected, "any possible prejudicial effect of the phrase was harmlessly lost in the totality of the instructions." *State v. Black*, 116 N.H. at

837–38, 368 A.2d at 1179. *See also United States v. Park*, 421 U.S. 658, 674 (1974); *Cupp v. Naughten supra*. We hold that any possible error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18 (1966).

In sum, we are unable to agree with the defendant that this is a case controlled by *Dunn v. Perrin*, 570 F.2d 21 (1st. Cir. 1978). This cannot be said to be an instance where the effect of the instruction "was to obfuscate one of the 'essentials of due process and fair treatment.' " *Id.* at 25, *quoting In re Winship*, 397 U.S. 358, 359 (1969). We are also unable to agree with either the defendant or the First Circuit that the phrase "strong and abiding conviction," when taken in context, operates to shift the burden of proof to the defense. Were it to do so, we would have no recourse but to reverse. RSA 625:10; *In re Winship*, 397 U.S. 358, 364 (1969).

■ Defendant's contention that the court further erred in instructing the jury that a reasonable doubt exists "where our belief in a fact is so uncertain that we would hesitate to act upon the strength of it to undertake something of importance and seriousness equal to this case" is foreclosed by *Dunn v. Perrin*, 570 F.2d at 24–25. As noted in that case, the above-quoted instruction has received widespread approval. *See Holland v. United States*, 348 U.S. 121, 140 (1954); *United States v. Robinson*, 546 F.2d 309, 313 (9th Cir. 1976); *United States v. Dixon*, 507 F.2d 683, 684 (8th Cir. 1974). We find these authorities persuasive, and hold that no error was committed.

■ This court is cognizant of the long history of challenges to jury instructions concerning the reasonable doubt standard. *See generally* F. Wharton, Criminal Evidence § 12 (13th ed. 1972) and cases cited therein. Mindful of the uncertainties spawned by continued litigation, and aware of the importance of a smooth functioning criminal justice system, we are now prepared to exercise our supervisory jurisdiction over the trial courts of New Hampshire, N.H. CONST. pt. II, art. 73-A and RSA 490:4, and to instruct those courts regarding jury instructions relative to reasonable doubt.

To avoid needless litigation, the following model charge is suggested:

BURDEN OF PROOF,
PRESUMPTION OF INNOCENCE, REASONABLE DOUBT

Under our constitutions, all defendants in criminal cases are presumed to be innocent until proven guilty beyond a reasonable doubt. The burden of proving guilt is entirely

on the State. The defendant does not have to prove his innocence. The defendant enters this courtroom as an innocent person, and you must consider him to be an innocent person until the State convinces you beyond a reasonable doubt that he is guilty of every element of the alleged offense. If, after all the evidence and arguments, you have a reasonable doubt as to defendant's having committed any one or more of the elements of the offense, then you must find him not guilty.

A "reasonable doubt" is just what the words would ordinarily imply. The use of the word "reasonable" means simply that the doubt must be reasonable rather than unreasonable; it must be a doubt based on reason. It is not a frivolous or fanciful doubt, nor is it one that can easily be explained away. Rather, it is such a doubt based upon reason as remains after consideration of all of the evidence that the State has offered against it. The test you must use is this: If you have a reasonable doubt as to whether the State has proved any one or more of the elements of the crime charged, you must find the defendant not guilty. However, if you find that the State has proved all of the elements of the offense charged beyond a reasonable doubt, you should find the defendant guilty.

We caution our trial judges to avoid attempts at further defining reasonable doubt. In many instances, further definition leads only to further complication and needless litigation. *See Orrill v. State*, 509 P.2d 930 (Okla. Crim. App. 1973); *Cosco v. State*, 521 P.2d 1345 (Wyo. 1974).

II. *Jury Charge on Elements of Offense*

The defendant argues that the trial court did not make clear to the jury that defendant must be found to have known that he was not "licensed or privileged" to remain on the property before a guilty verdict could be returned. We reject this argument.

RSA 635:2 provides in part: "A person is guilty of criminal trespass if, knowing that he is not licensed or privileged to do so, he enters or remains in any place. . . ." An essential element of the crime is that the defendant know that he was not licensed or privileged to enter or remain on the premises.

In the case before us the court charged the jury as follows:

The defendant in this case is charged with a violation of a statute. The statute, which I will paraphrase for you, says, in substance, this:

"A person is guilty of criminal trespass, if, knowing that that he is not licensed or privileged to do so, he enters or remains—" in any place. This defendant is not charged with entering but rather, remaining. So the applicable statute would read as follows:

"A person is guilty of criminal trespass if, knowing that he is not licensed or privileged to do so, he remains in any place in defiance of an order to leave which was personally communicated to him by the owner or authorized person."

Now, under that statute, the State really has five matters to prove beyond a reasonable doubt.

Number one: Did the defendant knowingly remain on the property of Properties, Inc.? They must prove beyond a reasonable doubt that he did so, without privilege or license. They must prove that he did so in defiance of an order to leave. They must prove also that an order to leave was personally delivered. And they must prove beyond a reasonable doubt that that order to leave was issued by a person authorized by Properties, Inc.

In the statute, there are words which may require definition. "Not privileged or licensed" means without permission or without right. "Knowingly" means that the defendant was aware of his conduct. "Personally communicated" means directly communicated. "Authorized" means that the property owner had authorized the person or persons who made the order to do that, and, as we all know, corporations can act only through their agents.

So the State has the burden of proving those essential allegations which are in the complaint.

Now, the defendant denies that he acted knowingly and in this case claims that he believed and acted necessarily to avoid a greater harm to himself and to others under the provisions of Revised Statutes Annotated, 627 Section 3, which he read to you from the witness stand.

The defendant's conduct can be justified or excused only if he acted in a sense of urgency to avoid what is known as an imminent danger which is to be determined by and in accordance with ordinary standards of reasonableness.

■ ■ The court, by twice paraphrasing the statute, clearly stated that an essential element of the crime was that defendant know he was not licensed or privileged to remain on the property. The further explanations of the various elements all relate back to these original statements. The statement that defendant "knowingly remain . . . without privilege or license" is just a different way of saying that he knowingly remained knowing he was without privilege or license. The word knowingly relates to both "remain" and "without license or privilege." The challenged statement should not be read in isolation from the rest of the charge which made the correct rule abundantly clear. *State v. Belkner*, 117 N.H. 462, 471, 374 A.2d 938, 944 (1977); *Cupp v. Naughten*, 414 U.S. 141, 146–47 (1973). Although a different explanation would be preferable, we hold that, considering the charge as a whole, it made the requirement of knowledge of lack of privilege or license sufficiently clear, and that it is improbable that "the jury could have been misled." *Davis v. State*, 94 N.H. 321, 323, 52 A.2d 793, 794 (1947); *State v. Skaff*, 94 N.H. 402, 409, 54 A.2d 155, 161 (1947); *State v. Dupuy*, 118 N.H. 848, 395 A.2d 851 (1978).

### III. *Sentencing*

Defendant and the Civil Liberties Union maintain that the sentence of six months in the house of correction, two months suspended, for a first-time offender is unconstitutionally disproportionate and constitutes cruel and unusual punishment. They argue that a major disparity exists between this sentence and those received by others for the same offense, that the court failed to consider defendant's background and rehabilitative prospects, and that the court punished defendant more harshly because of his adherence to civil disobedience, thus denying him equal protection of the law, due process, and freedom of speech in violation of both the Constitutions of the United States and this State. We reject these arguments.

The legislative authorization for a maximum sentence in a criminal trespass case is one-year imprisonment and a $1,000 fine. RSA 651:2. Defendant's sentence is half this maximum, and the time he is required to serve after suspension is only one-third of the maximum authorized with a probable reduction of one-third of the four months. RSA 651:18. The State admits that the sentence in this and the related cases arising out of the Seabrook demonstrations may be higher than those usually imposed in ordinary criminal trespass cases and are substantially higher than those imposed by the district court from which appeal was taken.

We agree with the trial judge and with the State, however, that this case and the related cases are not ordinary criminal trespass cases. The defendant was part of a large organized group bent on mass occupation of private property for the stated purpose of stopping the construction of the Seabrook plant. There were avowals that demonstrators would return to the site and commit successive trespasses in an effort to stop construction. The trial court was thus faced with an entirely different situation than exists in the ordinary criminal trespass case.

■ The real purpose of all sentencing is to reduce crime. This theoretically can be done by rehabilitating the individual defendant so he will not offend again. Another way is to punish the individual defendant in the hope that he will be deterred from repeating his crime. Moreover, by punishing the individual defendant, others may be deterred from committing crimes. Whichever sentence is thought to be likely to reduce the most crime is the proper sentence to impose.

■ Contrary to defendant's assertion, the emphasis on deterrence in this case is not inconsistent with N.H. Const., pt. I, art. 18, which states in part that "the true design of all punishments [is] to reform, not to exterminate mankind." It should be noted that this constitutional language sanctions "punishment" as a method of reforming the criminal. *See State v. Farrow*, 118 N.H. 296, 386 A.2d 808 (1978). This same language also recognizes deterrence as a valid purpose of sentencing; the implication is that reform will result from the deterrent effect of punishment. General deterrence is also recognized in other language in the article when it states that if the same "severity is exerted against all offenses, the people are led . . . to commit the most flagrant with as little compunction as they do the lightest offenses." *Id.* Rehabilitation, which in the modern sense of the word includes counseling and training, is not a constitutional requirement.

■ The defendant in this case is an educated, highly motivated individual with no prior record and with no apparent criminal tendencies apart from the practice of civil disobedience to accomplish what he considers to be an important goal. He is not in need of rehabilitation in the modern sense of the word. The State, however, does need to deter repetition of this offense both by the defendant and others. Both individual and general deterrence were important considerations for the imposition of sentence in this and related cases. To accomplish these purposes, the sentence needed to be more severe than in ordinary criminal trespass cases. In deciding on the

degree of severity to obtain the necessary deterrent effect, the trial judge was entitled to consider the dedication and motivation of the offender who would not likely be deterred by a lighter sentence, but who with others might be induced by a more severe sentence to use lawful, instead of unlawful, means to protest. The object is not to stifle protest, but to deter unlawful conduct.

Although we recognize that, as defendant argues, the constitutional prohibitions against cruel and unusual punishments might be violated by sentences which are grossly disproportionate to the crime, *see Robinson v. California,* 370 U.S. 660, 667 (1962); *Coker v. Georgia,* 433 U.S. 584, 591–92 (1977), and that sentences might be so disproportionate as to constitute an abuse of discretion, *see Benton v. Dover District Court,* 111 N.H. 64, 274 A.2d 876 (1971), no such error exists in this case.

Nor was the sentence in this case a denial of due process, equal protection of the law, or freedom of speech under either constitution. There is no indication here that the trial court failed to consider the individual defendant in imposing sentence or that the court rested the sentence on impermissible grounds. General deterrence is a permissible consideration. *United States v. Wardlaw,* 576 F.2d 932 (1st Cir. 1978). The sentences were not imposed to deter freedom of expression but to deter illegal actions. There has been no restraint on the lawful exercise of rights protected by the first amendment. We hold that, on the record before us, there was no illegality in the sentence and no abuse of discretion.

*Exceptions overruled.*

BOIS, J., did not sit; the others concurred.