Rockingham
No. 78-159

THE STATE OF NEW HAMPSHIRE

v.

CAROLYN JEAN DUPUY

December 6, 1978

*Thomas D. Rath*, attorney general, *John C. Boeckeler, Richard B. McNamara, Richard B. Michaud,* and *Peter W. Heed,* assistant attorneys general, and *Peter W. Mosseau,* attorney, by brief, for the State.

*Emmanual Krasner,* of Farmington, and *Sue Ann Shay,* of Hartford, Connecticut (*Mr. Krasner* orally), for the defendant.

*H. Jonathan Meyer,* of Concord, by brief and orally, for New Hampshire Civil Liberties Union, amicus curiae.

GRIMES, J. This is a criminal trespass case under RSA 635:2 arising from the May 1977 occupation of the Seabrook Nuclear Power Plant site. The reserved case presents essentially two issues: whether

the trial court erred in denying defendant's motions for dismissal and for a directed verdict on the grounds of insufficient evidence; and whether the court erred in its charge to the jury regarding the elements of the alleged trespass. On the basis of the record before us, we hold that no error was committed.

In reviewing denials of "motions for dismissal and for a directed verdict for the defendant, the evidence must be construed most favorably to the State," *State v. Breest*, 116 N.H. 734, 741, 367 A.2d 1320, 1326 (1976); "the defendant must show that the evidence viewed in its entirety, giving the State the benefit of all reasonable inferences, was insufficient to prove beyond a reasonable doubt that he was guilty of the crime charged." *State v. Casey*, 113 N.H. 19, 19, 300 A.2d 325, 326 (1973); *accord, State v. Berry*, 117 N.H. 352, 355, 373 A.2d 355, 357 (1977). The defendant acknowledges this stringent standard, but contends that even on the basis of all reasonable inferences the State's case must fail. We cannot agree.

At trial the following facts were established. On the morning of April 29, 1977, the defendant entered onto the site of the Seabrook Nuclear Power Plant. At no time did she go into the fenced-off zone known as the "injuncted area," a portion of the site covered by an anti-trespassing injunction. Defendant, along with approximately 1,400 other demonstrators, proceeded to "occupy" a large parking lot within the greater Seabrook property. According to the defendant's testimony, the only time she left that area was for occasional walks to the latrines, which were located across a cleared area and atop a small hill. Defendant remained on the site until her early-morning arrest on May 2, 1977.

In anticipation of the May demonstration, the Public Service Company of New Hampshire (PSC) and Properties, Inc., a wholly owned subsidiary of the PSC, met in late April 1977 with various representatives of the State. Both Pierre Caron, legal counsel for the companies, and William Adams, the executive vice-president of both companies, testified that, during one of the several meetings, they authorized Colonel Doyon of the New Hampshire State Police "to do whatever is necessary to protect the site and to have the site cleared of demonstrators by the start of the first work shift on Monday [May 2] morning."

The State police responded and established a command post at the Seabrook site just east of the parking lot area. On Sunday, May 1, some 400 law enforcement officers stationed themselves around the demonstration site in such a fashion that none was ever more than

fifty feet from another. Shortly after 3:00 p.m., on that same day, Colonel Doyon broadcast an announcement to the demonstrators through the radios of five cruisers. In substance, the demonstrators were informed that Colonel Doyon was authorized by representatives of the PSC to act as their agent and to order the people to leave; that the demonstrators were acting in violation of New Hampshire's criminal trespass statute; that they would be allowed thirty minutes to leave; and that if they remained after the thirty minutes they would be arrested for criminal trespass. The five patrol cars broadcasting this message were arranged about the crowd so that no demonstrator within the parking lot could be more than one hundred feet from any car. Testimony was introduced to show that the crowd was quiet during the broadcast and that the order to leave was easily heard from as far away as two hundred fifty feet. Two police officers further testified that while any person who so wished was permitted to leave the site, no one was allowed to enter the area after Colonel Doyon's announcement. Defendant was arrested on the site at approximately 4:00 a.m. on Monday, May 2.

The defendant was charged as follows:

> That the defendant Carolyn J. Dupuy . . . did commit the offense of criminal trespass contrary to RSA 635:2 . . . in that the defendant did knowing [she] was not licensed or privileged to do so, remain on a certain tract of land off Rocks Road, in the town of Seabrook, owned by Properties, Inc., a subsidiary of Public Service Company of New Hampshire, in defiance of an order to leave which was personally communicated to [her] by the company's agent or other authorized persons, against the peace and dignity of the State.

Defendant was found guilty in the district court, and she appealed to the superior court. A jury trial resulted in a verdict of guilty, and defendant was sentenced to six months, four months suspended, in the house of correction. Defendant's exceptions were reserved and transferred by *Cann*, J.

Defendant advances three arguments regarding her motions for dismissal and for a directed verdict. She first claims that the facts show that she was literally invited onto the property, and that she therefore cannot be found to have known she was not licensed or privileged to be there. RSA 635:2 II(b)(2). This argument misses the essence of the alleged offense, for even if we assume for argument's sake that she was indeed invited onto the site, that fact has no bear-

ing upon the charge that she knew she was not licensed or privileged to *remain* on the property. The defendant is charged with improperly remaining on the site after an order to leave was communicated to her. She is not charged with improperly entering onto the site.

Defendant's second argument is that the State failed to introduce sufficient evidence to prove that Colonel Doyon was authorized by the owners of the property to order the demonstrators to leave. The crux of this contention is as follows: (1) at the time of the demonstration, Properties, Inc. owned the fee interest in the demonstration site; (2) in his announcement, Colonel Doyon indicated that his authorization came from an officer of the PSC; (3) there was insufficient evidence to prove that his authorization came from elsewhere; (4) hence, Colonel Doyon was not authorized to act as the agent of the actual property owner, Properties, Inc. This argument, though logical in form, cannot withstand prolonged scrutiny. Defendant is charged with remaining after an order to leave was communicated by one who was in fact authorized to give the order. The issue, therefore, is whether a jury could properly find that Colonel Doyon was in fact so authorized. The State's evidence shows that Properties, Inc., is a wholly owned subsidiary of the PSC, and that Mr. Adams is an officer of both entities. Two witnesses for the State testified that Mr. Adams authorized Colonel Doyon to clear the site of demonstrators, and that Mr. Adams did this in his capacity as a representative of both the PSC and Properties, Inc. "[O]n the evidence before it, viewed in its entirety, the jury could find" that Colonel Doyon was authorized by the owners of the Seabrook site to order the demonstrators off the site. *State v. Breest*, 116 N.H. at 741, 367 A.2d at 1326; *accord, State v. Berry*, 117 N.H. at 355, 373 A.2d at 357.

Defendant's final argument in support of her motions for dismissal and for a directed verdict is that the State failed to prove that the order to leave "was personally communicated to her." She contends first that the phrase "personally communicated," RSA 635:2 II(b)(2), should be read to require actual, individual service of notice to quit the premises. We decline to adopt such a construction in this case. In the midst of large demonstrations, the police are confronted by sufficient obstacles to peace-keeping without our imposing the burdensome requirement of personal service. We hold that in circumstances such as here presented, personal dialogue between demonstrator and peace officer is not required. Rather, the notice to quit the premises must be given in a manner reasonably calculated,

under all the circumstances, to give notice to all present. *Cf. Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (notice requirements based upon due process); *State v. Linsky*, 117 N.H. 866, 874, 379 A.2d 813, 819 (1977) (notice of injunction).

 Defendant further argues that insufficient evidence was produced by the State to prove that she heard the order to leave. "It is well settled in this State that a criminal conviction can be based on circumstantial evidence where 'all of the factors and circumstances' in evidence are sufficient for a reasonable juror, properly instructed, to find guilt beyond a reasonable doubt." *State v. Gilbert*, 115 N.H. 665, 667, 348 A.2d 713, 715 (1975) (citations omitted), *quoting State v. Greely*, 115 N.H. 461, 468, 344 A.2d 12, 17 (1975). Defendant admits hearing the broadcast, but denies having been able to understand what words were spoken. She claims that because she was at the latrines when the broadcast was made, she was unable to discern the content of the message. The jury, however, is entitled to believe or disbelieve the testimony of any witness. *State v. Eldridge*, 118 N.H. 665, 392 A.2d 155 (1978); *State v. Heger*, 117 N.H. 1021, 380 A.2d 1106 (1977). In the case before us there was ample evidence from which a jury could find beyond a reasonable doubt that the defendant was not at the latrines, or, if she were, that she had heard the order to leave, and that she was guilty of the crime charged. *State v. Breest*, 116 N.H. at 741, 367 A.2d at 1326. We hold that the trial court correctly denied defendant's motion for dismissal and for a directed verdict.

As in *State v. Wentworth*, 118 N.H. 832, 395 A.2d 858 (1978), the defendant argues that the trial court failed to charge the jury correctly on the requirement that defendant knew she was not licensed or privileged to remain on the property as required by RSA 635:2. In charging the jury on the elements of criminal trespass, the judge first read aloud the complaint which tracked the statute on this point word for word. The court then read the statute to the jury containing the words "knowing he is not licensed or privileged to do so enters or remains in any secured premises; or in any place. . . ." In further explaining the statute, the court used the phrase "knowingly enters," and in explaining the word "knowingly" stated that the charge was that "a person knowingly enter or remain." After extensive explanation of the words "knowing" and "knowingly" and the necessity of proving that element beyond a reasonable doubt, and after explaining other elements of the offense, the court charged as follows:

These facts as set forth in the complaint must be proved by the standard I have given beyond a reasonable doubt 'That the defendant did knowing she was not licensed or privileged to do so, remain on a certain tract of land. . . .'

■ Considering the forceful and clear statement of the law both before and after the challenged statement, we are convinced that the jury could not have been misled by the challenged portion of the charge. We are satisfied that it is improbable that the jury misunderstood. *State v. Wentworth*, 118 N.H. 832, 395 A.2d 858 (1978); *State v. Skaff*, 94 N.H. 402, 409, 54 A.2d 155, 161 (1947).

■■ Defendant further seeks review of the trial court's ruling that she could not avail herself of the defense of competing harms, RSA 627:3. She also asks this court to find that the sentence imposed by the trial court is unduly harsh and constitutes an abuse of discretion. On the issue of whether RSA 627:3 is available as a defense in cases of the sort here presented, our decision in *State v. Dorsey*, 118 N.H. 844, 395 A.2d 855 (1978), makes it clear that it is not. As for the sentence of six months, four months suspended, in the house of correction, the defendant failed to take exception to the sentence in the court below and is therefore precluded from raising that issue here. Nonetheless, we note that even were the issue properly before us, we would find it disposed of by our decision in the companion case of *State v. Wentworth*, 118 N.H. 832, 395 A.2d 858 (1978).

*Exceptions overruled.*

BOIS, J., did not sit; the others concurred.