Thomas E. BREEDLOVE, Petitioner,

v.

Clair CRIPE, John W. Allman, Jerome A. Edwards, Gary L. Walls, Paul S. Girvan, Wiley F. Ward and Charles W. Kemp, Respondents.

No. CA–1–81–5.

United States District Court,
N. D. Texas,
Abilene Division.

March 30, 1981.

Thomas E. Breedlove, pro se.

Kenneth J. Mighell, U. S. Atty., Dallas, Tex., Roger L. McRoberts, Asst. U. S. Atty., Lubbock, Tex., for respondents.

## MEMORANDUM AND ORDER

WOODWARD, Chief Judge.

Thomas E. Breedlove, a federal prisoner at the Big Spring Federal Prison Camp, filed these proceedings *in forma pauperis*.

He seeks injunctive and declaratory relief and damages against various officials of the Bureau of Prisons.

On July 31, 1980, Inmate Breedlove participated in a Community Program Activity outside the confines of the Camp. He and other inmates were on a set-up detail for a musical program to be performed in the community at Comanche Trail Park in Big Spring, Texas. Breedlove, without authority and at a time when there was no supervising authority from the Bureau of Prisons at the scene, left the immediate vicinity where the inmates were supposed to be engaged in the set-up activities and met an unnamed female. The distance which Breedlove strolled from the set-up area and the time he was gone were apparently not great, but he did leave the amphitheater without permission.

Defendants, Paul S. Girvan and Charles W. Kemp, Camp officials, noted Breedlove's return to the amphitheater in the company of the unknown female. Girvan questioned Breedlove, delivered him back to the camp, and reported the incident. His report was reviewed by the Unit Disciplinary Committee, the chairman of which was the defendant, Wiley F. Ward. That committee, after making its review, on August 1, 1980, referred the complaint to the Institution Disciplinary Committee (IDC), of which the defendant, Jerome A. Edwards was chairman.

Breedlove was given a written notice of charges and notice of hearing more than twenty four hours prior to the IDC hearing and was advised of his rights to representation before the IDC by a full-time member of the staff, to call witnesses and to present documentary evidence including statements of unavailable witnesses, to present a statement or to remain silent, to be advised of the decision, and to appeal the decision. He requested staff representation and was so represented at the IDC hearing on August 4, 1980. The IDC found that the act was committed as charged and that the offense was of Moderate Severity. It removed petitioner from community programs and suspended good time credits for the month of July, with a review to be conducted after ninety days.

Petitioner exercised his right to appeal by filing on August 6, 1980, a Request for Administrative Remedy to the defendant, John W. Allman, Superintendent of the Camp, seeking review of the IDC determination. He complained further that the defendant, Charles W. Kemp,[1] another Camp official, was present during the IDC hearing and that his presence was unauthorized. He filed also on August 6, 1980, a Request for Administrative Remedy with defendant, Gary L. Walls, Supervisor of Education at the Camp, seeking determination that the IDC action of August 4, 1980, should be expunged from his record. Both Requests for Administrative Remedy were denied.

Petitioner's Regional Appeal was denied on September 3, 1980, and on December 1, 1980, the defendant, Clair A. Cripe, General Counsel for the Bureau of Prisons in Washington, D.C., denied the final administrative appeal.

By that time the ninety day period contemplated by the decision of the IDC had expired. Most rights and privileges were restored after review by the Unit Classification Team on November 6, 1980. However, the right to visit with Breedlove's parents for two days away from the Camp (which had been authorized prior to the incident) was not restored, the right to attend classes at Howard College was not restored, and the Team no longer recommended him for parole.

Petitioner instituted the instant action, setting out ten bases for relief. Liberally construing his *pro se* pleadings, he is seeking declaratory judgment that the disciplinary incident report be expunged from his records and that all rights existing prior to the incident be restored to him, that a mandatory injunction issue against the officials

---

1. Kemp's presence during deliberations was denied by the chairman of the IDC at the evidentiary hearing in federal court.

of the Camp so that he could participate in the educational programs at Howard College in Big Spring, Texas, and for other injunctive relief. In addition, he seeks compensatory and punitive damages against the named defendants.

After hearing on January 15, 1981, this court entered order denying the application for temporary injunction. The testimony and other proof adduced at the hearing did not demonstrate that the action taken by the Camp authorities was an abuse of discretion or that it otherwise was improper.

An inmate in a federal prison has no constitutional right to participate in community programs, nor to enroll and attend classes in a college outside the Camp, nor to visit with relatives outside the Camp. There are a wide spectrum of discretionary actions that traditionally have been the business of prison administrators. Those administrators have an organizational proximity to moral and disciplinary matters and they are far better able to integrate disciplinary procedures with the other objectives of the prison program than can a judge who is several steps removed from the actual operation of the correctional program. The development of disciplinary procedures should be left to the sound discretion of correctional officials charged with the responsibility for their administration. *Wolff v. McDonnell*, 1974, 418 U.S. 539, 568, 94 S.Ct. 2963, 2980, 41 L.Ed.2d 935.

That is not to say that the doors to judicial review are closed on the correctional process. Prisoners do retain a variety of important rights that the court must be alert to protect. The facts of this case, however, are not those that justify judicial interference. Petitioner did leave the premises without permission and, notwithstanding his contention that there were no guidelines which outlined his responsibilities and restrictions, common sense should have warned him that the activity in which he engaged was fraught with danger. Although the offense was perhaps innocuous it was nonetheless an offense. He was afforded the full panoply of due process rights provided by the rules and regulations of the Bureau of Prisons. The due process procedures which he was afforded were well within the standard announced in *Wolff v. McDonnell*, supra. Breedlove's application for declaratory judgment and for injunctive relief are each denied.

The second portion of the action sought by Breedlove is for damages against each of the prison officials who was involved in the disciplinary determinations. The Bureau of Prisons contends that each of those officials enjoys absolute immunity, not merely the qualified immunity available to a federal employee. There is merit in that contention.

The issue is whether the prison officials were acting in judicial capacities at the time the disciplinary decisions were made. This court finds that they were so engaged.

Few doctrines were more solidly established at common law than that of immunity of judges from liability for damages for acts committed within their judicial jurisdiction. *Pierson v. Ray*, 1967, 386 U.S. 547, 553, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288. Prosecutors are regarded as "quasi-judicial" officers entitled to the same absolute immunity as judges when their activities are intimately associated with the judicial phase of the criminal process. *Imbler v. Pachtman*, 1976, 424 U.S. 409, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128. Even where the "prosecutor" is engaged in activities which are essentially investigative he is protected from liability if his acts are reasonable and performed in good faith.

The United States Supreme Court recently extended the absolute immunity doctrine announced by *Pierson v. Ray* to administrative judges. *Butz v. Economou*, 1978, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895. The individuals sued by Economou in that case included the Secretary of Agriculture, the Chief Hearing Examiner who had presided over a proceeding where the registration of a commodity futures commission merchant was involved, the Department of Agriculture attorney who had prosecuted the proceeding and several Auditors who had conducted the investigation. The Supreme

Court explained that those seeking absolute exemption from personal liability for unconstitutional conduct must establish three factors: (1) there must be a functional comparability of an official's activity to those of a judge; (2) the nature of the controversy in which the official is forced to become a participant must be sufficiently intense so that there is a realistic prospect of continuing harassment or intimidation by disappointed litigants; and (3) the system in which the official operates must contain adequate due process safeguards.

The activities of the named defendants fall well within those standards. Under the facts of this case this court concludes that the defendants Cripe, Allman, Edwards, Walls, and Ward are entitled to absolute immunity from damages. The pleadings and the testimony at the hearing on temporary injunction failed to demonstrate any lack of good faith or unreasonable activity on the part of either defendant Girvan or Kemp. This court concludes that they, also, are entitled to immunity from damages.

LET JUDGMENT BE ENTERED ACCORDINGLY.