Rockingham
No. 84-428

# The State of New Hampshire

v.

# Vernon W. Evans

December 31, 1985

*Stephen E. Merrill*, attorney general (*Ronald F. Rodgers*, assistant attorney general, on the brief and orally), for the State.

*Engel & Morse P.A.*, of Exeter (*Paul R. Pudloski* on the brief and orally), for the defendant.

KING, C.J. On February 18, 1982, the defendant was sentenced to serve a term of eighteen years to life in the New Hampshire State Prison for a second degree murder he committed two years earlier at age sixteen. The sentenced imposed by the Superior Court (*Nadeau*, J.) required the State to develop an individualized plan for

treatment and rehabilitation of the defendant, whose progress would be monitored by the court. In addition, the sentencing order provided that the defendant could not petition for suspension of his sentence prior to February 18, 1990, unless certain conditions were met, one condition being that the defendant make "extraordinary and unexpected progress" during confinement.

In accordance with the sentence imposed, the State performed an initial psychiatric evaluation of the defendant. The prison warden then prepared a treatment plan, which contemplated monitoring of the defendant's progress by prison staff; participation in educational, vocational and work programs at the prison; and weekly meetings with a confidential psychologist. With the exception of the confidential counseling and monitoring by the court, the defendant was subject to the same restrictions and afforded the same opportunities as the other inmates in the State prison.

As an inmate, the defendant completed a sufficient number of high school level classes to be awarded a high school diploma in June, 1984. During the summer of 1984, the prison offered one college-level course in writing, which was sponsored by the University of New Hampshire and underwritten by the Dean Trust. The defendant attended this course. At the same time, he sought to enroll in an associate degree program offered by the New Hampshire Technical Institute and to arrange for tutorial instruction at the prison. The defendant applied for educational loans, but requested that the prison pay any costs not covered by financial aid sources.

On June 14, 1984, after the warden denied his request for college-level courses, the defendant filed a "motion to review sentence" in the superior court, requesting an equitable order directing the State prison to provide him with State-funded college-level courses so that he could meet the "extraordinary progress" condition. On August 15, 1984, following a hearing on an agreed statement of facts and issues of law, the Superior Court (*Nadeau*, J.) ordered the State to propose a plan for a State-funded college-level program at the New Hampshire State Prison. This case comes before us on the State's exception to this order, which has been stayed pending appeal. The State has petitioned, in the alternative, for a writ of prohibition against the superior court.

Two issues are presented to this court:

> I. Does an inmate at the New Hampshire State Prison have a constitutional or statutory right to a State-funded college education?

504

II. Does the superior court have jurisdiction to order the State of New Hampshire to provide a college education to a State prison inmate?

We answer both questions in the negative and grant the State's petition for a writ of prohibition.

■ The defendant makes no claim that the warden's denial of college-level courses constitutes cruel and unusual punishment in violation of the eighth amendment to the United States Constitution. Nonetheless, decisions interpreting the eighth amendment provide a useful backdrop for analysis of the defendant's rights under New Hampshire law. In acknowledging that the eighth amendment "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society," *Trop v. Dulles*, 356 U.S. 86, 101 (1958), the United States Supreme Court has indicated that prison conditions which "deprive inmates of the minimal civilized measure of life's necessities" may constitute cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Accordingly, a prison must provide its inmates with adequate food, clothing, shelter, sanitation, medical care and protection for personal safety to satisfy its eighth amendment obligations. *Lovell v. Brennan*, 566 F. Supp. 672, 689 (D. Me. 1983), *aff'd*, 728 F.2d 560 (1st Cir. 1984). As viewed by the federal court, the right to rehabilitation generally falls outside the purview of eighth amendment considerations. Only where overall prison conditions were so debilitating that inmates were prevented from achieving any degree of rehabilitation has the federal court found that the absence of rehabilitative or educational programs violated the constitution. *E.g.*, *Finney v. Arkansas Board of Correction*, 505 F.2d 194, 209 (8th Cir. 1974).

■■ Thus, the right to rehabilitation under the Federal Constitution merely guarantees freedom from confinement in conditions that cause degeneration. Although rehabilitation is a primary goal of incarceration, *Pell v. Procunier*, 417 U.S. 817, 823 (1973), the failure of a prison to provide an affirmative rehabilitation program, of itself, has no constitutional significance. *Laaman v. Helgemoe*, 437 F. Supp. 269, 316 (D.N.H. 1977). *See also Rhodes v. Chapman, supra* at 348.

■ Our analysis under New Hampshire law begins with the State Constitution, which provides in part that "the true design of all punishments [is] to reform." N.H. CONST. pt. I, art. 18. To this effect, we stated in *State v. Belanger*, 114 N.H. 616, 325 A.2d 789 (1974) that sentencing has two purposes, the first goal being "protection of society against the commission of future crimes" and the

"ultimate goal" being to rehabilitate the offender. *Id.* at 619, 325 A.2d at 791. Yet our recognition of rehabilitation as a *goal* of confinement does not lead inexorably to the conclusion that inmates have a *right* to rehabilitation. We believe that the language of article 18 is best read as a general statement of principle rather than as a mandatory standard which creates affirmative rights. *See State v. Elbert,* 125 N.H. 1, 15, 480 A.2d 854, 862 (1984). A defendant who has been convicted has no constitutional claim that a particular sentence is not meaningful and rehabilitative. *See State v. Darcy,* 121 N.H. 220, 427 A.2d 516 (1981). Nor can he claim that the lack of rehabilitative programs in prison violates the State Constitution. "Rehabilitation, which in the modern sense of the word includes counseling and training, is not a constitutional requirement." *State v. Wentworth,* 118 N.H. 832, 842, 395 A.2d 858, 865 (1978).

While the New Hampshire Constitution creates no substantive right to rehabilitation, we agree with the characterization of the United States District Court for the District of New Hampshire that the State Constitution does place a "constitutional imprimatur" on this goal. *Laaman v. Helgemoe, supra* at 317. We consider further, then, whether our statutes or case law have established a right to rehabilitation.

The defendant cites RSA 651:2 in support of his contention that the sentencing court may, in its discretion, impose any sentence it deems appropriate, including presumably one which provides for a rehabilitative or educational program. This reliance is misplaced, for this statute, by its terms, limits the discretion of the sentencing judge to a choice of imprisonment, probation, conditional or unconditional discharge, or a fine. Within these parameters, the judge has broad discretion to assign different sentences, suspend sentence, or grant probation in order to achieve the goals of punishment, deterrence, protection of society and rehabilitation. *Stapleford v. Perrin,* 122 N.H. 1083, 1087, 453 A.2d 1304, 1306 (1982). The legislature has not, however, authorized the judiciary to structure correctional methods as an adjunct to imposing a sentence of incarceration in State prison. *Cf.* RSA 651:19 (sentencing court may for rehabilitative purposes release inmate committed to penal institution *other than State prison*).

In contrast, the legislature has provided the department of corrections, and more specifically, the warden, with authority to determine "the terms, conditions, and place of incarceration once a person has been sentenced to the New Hampshire State Prison." *State v. Peabody,* 121 N.H. 1075, 1078–79, 438 A.2d 305, 308 (1981). One

condition of incarceration is the availability of educational programs. RSA 21-H:13, III (Supp. 1983) provides that the commissioner of the department of corrections shall adopt rules relative to "[s]tandards for the management and operation of rehabilitation related programs, including but not limited to . . . Education." Under RSA 622:7, X (Supp. 1983), it is the duty of the warden "to conduct and manage the educational program of the prison." These statutes create an entitlement to educational programs in prison, but have not been interpreted to entitle an inmate to any particular program. *Lane v. Reid*, 575 F. Supp. 37, 39 (S.D.N.Y. 1983); *Association for Reduction of Violence v. Hall*, 558 F. Supp. 661, 663–64 (D. Mass. 1983), *vacated on other grounds*, 734 F.2d 63 (1st Cir. 1984). It is within the discretion of the warden to determine the content and availability of educational and other rehabilitative programs, subject to constitutional and statutory constraints. *Hayes v. Cuyler*, 475 F. Supp. 1347, 1350 (E.D. Pa. 1979). Absent a violation of an inmate's rights, the judiciary may not interfere with the exercise of this discretion by ordering the prison to provide a particular educational program. As the United States Supreme Court stated in *Bell v. Wolfish*, 441 U.S. 520 (1979):

> "Judges . . . have a natural tendency to believe that their individual solutions to often intractable problems are better and more workable than those of the persons who are actually charged with and trained in the running of the particular institution under examination. But under the Constitution, the first question to be answered is not whose plan is best, but in what branch of the Government is lodged the authority to initially devise the plan."

*Id.* at 562.

The record indicates that the New Hampshire State Prison offers a high school program for its inmates, 85 percent of whom have less than a 12th grade education. Since 1978, the prison has offered three college-level courses. Although the prison has on two occasions requested funding from the legislature for college-level courses, no appropriations were provided. Prisoners have earned college credits on their own through the College Level Equivalency Program or through correspondence courses. While we recognize the reasonableness of the defendant's proposed program, we cannot say under these circumstances that the defendant's rights have been violated. A talented law-abiding citizen of the State of New Hampshire has no right to a State-funded college education. A talented inmate of the New Hampshire State Prison has no greater right.

Were we to recognize the right on the part of inmates to a particular rehabilitative program or permit judges to devise individualized plans for rehabilitation, the already difficult task of sentencing would become unmanageable. Removed from the actual operation of the prison and lacking expertise in correctional and rehabilitative methodologies, the judiciary is ill-suited to assume the responsibilities of prison administration. Moreover, an *ad hoc* approach to the assignment of rehabilitative or educational opportunities would require disproportionate allocation of limited resources among inmates. At best, this arrangement would simply substitute the judgment of a court for that of the legislature and prison officials, with no guarantee of net benefit. *See Procunier v. Martinez*, 416 U.S. 396, 404–05 (1974); *Nadeau v. Helgemoe*, 561 F.2d 411, 417 (1st Cir. 1977); *Breedlove v. Cripe*, 511 F. Supp 467, 469 (N.D. Tex. 1981).

While the judiciary has broad discretion in its sentencing authority, it cannot violate the separation of powers by invading the right of the legislature to appropriate money for prison programs or the right of the executive to devise and implement rehabilitative and educational programs at the State prison. The judiciary is properly cognizant of its power as a coequal branch of government; it must be as zealous in protecting the rights of the other coequal branches.

The superior court exceeded its jurisdiction in ordering the warden to develop a plan for college-level courses. Accordingly, we must countermand the order of the superior court and grant the State's petition for a writ of prohibition. *State v. Flynn*, 123 N.H. 457, 462, 464 A.2d 268, 271 (1983).

*Petition granted.*

All concurred.