Hillsborough
No. 88-334

## THE STATE OF NEW HAMPSHIRE

### v.

## DAVID LETENDRE

August 24, 1990

*John P. Arnold,* attorney general (*Tina L. Nadeau,* attorney, on the brief and orally), for the State.

*James E. Duggan,* chief appellate defender, of Concord, by brief and orally, for the defendant.

THAYER, J.   The defendant, David Letendre, was tried by a jury and convicted of burglary, robbery, aggravated felonious sexual assault, and resisting arrest, pursuant to RSA 635:1, RSA 636:1, RSA 632–A:2, and RSA 642:2, respectively. On appeal, he argues that the Trial Court's (*Pappagianis,* J.) charge to the jury on reasonable doubt deviated significantly from the model instruction delineated in *State v. Wentworth,* 118 N.H. 832, 838–39, 395 A.2d 858, 862–63 (1978), and therefore should automatically require reversal of the convictions and a new trial. In the alternative, he argues that the instruction as given was fatally flawed in two respects: first, that it failed to impress upon the jurors that they were required to employ the reasonable doubt standard as defined for them and, second, that the abbreviated version of the *Wentworth* charge did not provide the jurors with sufficient opportunity to absorb, consider, and understand the concept of reasonable doubt. In addition to these claims regarding the alleged inadequacies of the reasonable doubt instruction, Mr. Letendre also contends that the trial court committed reversible error in allowing the State "to cross-examine the defendant about the veracity of other witnesses." We find these arguments to be meritless and accordingly uphold the defendant's convictions.

■   We begin by noting that we have encouraged, indeed exhorted, the superior court to employ the reasonable doubt jury instruction set forth in the *Wentworth* case. This court is convinced that "use of the model instruction set forth in *Wentworth* will provide a balanced definition of reasonable doubt, will reduce needless litigation, and most importantly will insure the application of a uniform standard for juries weighing the evidence presented in trial courts throughout the State . . . ." *State v. Aubert,* 120 N.H. 634, 638, 421 A.2d 124, 127 (1980). However, despite our repeated pleas to refrain from altering the *Wentworth* charge, we have been called upon to determine the sufficiency of the reasonable doubt instruction in numerous instances where a trial judge has neglected to heed our warning and has chosen to stray from the mandated instruction. *See*

State v. Zysk, 123 N.H. 481, 488, 465 A.2d 480, 484 (1983) (judges asked numerous times not to change *Wentworth* charge; opportunity taken, *"once again,"* to remind trial judges not to add to language of *Wentworth* because it only leads to needless litigation) (citations omitted) (emphasis in original); *State v. Langdon*, 121 N.H. 1065, 1068, 438 A.2d 299, 300 (1981) (strongly reemphasized previous position that trial judges should refrain from altering *Wentworth* charge); *State v. Aubert*, 120 N.H. at 636, 638, 421 A.2d at 126, 127 (efforts to further define concept of reasonable doubt have been repeatedly criticized; trial judges requested not to add to the model charge); *State v. Wentworth*, 118 N.H. at 839, 395 A.2d at 863 (trial judges cautioned to avoid attempts at further defining reasonable doubt).

■ Pointing out this apparent reluctance on the part of some trial judges to deliver the instruction *verbatim*, it is the defendant's position that "without a firm rule, trial judges will not listen to the pleas of [this] Court." Arguing that "[a]fter a decade of cautioning and requesting, only mandating *Wentworth* will insure compliance," he would have us establish a *per se* rule "that any substantial modification of the *Wentworth* instruction will in the future require a new trial." Although it certainly has not escaped our notice that, had the trial court simply given the model charge, there would be no question concerning the sufficiency of the instruction, we hold that the remedy for such noncompliance is not automatic reversal. Without a showing that the defendant has somehow been prejudiced by the instruction as given, he is not entitled to a new trial. *State v. Bundy*, 130 N.H. 382, 383, 539 A.2d 713, 713 (1988).

In this case, the trial judge instructed the jury that

> "The State has the burden of presenting evidence that is sufficient to convince you that the statements in the accusation are true beyond a reasonable doubt.
>
> Under the United States and the New Hampshire constitutions, a person accused of having committed a crime is assumed to be innocent. The person accused does not have any burden to prove that he is or she is innocent. The State has the burden to prove that he or she is guilty. A person accused of having committed a crime enters the courtroom as an innocent person and you must consider him or her to be innocent unless the State convinces you beyond a reasonable

doubt that he or she is guilty of every element of the crime with which he or she is charged.

A reasonable doubt is what the words ordinarily mean, a doubt based upon reason. It is not a doubt that can be explained away easily. After you have considered all the evidence and the law, if you reasonably doubt that the State has proved any one or more of the elements of a crime charged, you must find the accused person not guilty. If you have no reasonable doubt that the State has proved all the elements of a crime charged, you should find him or her guilty."

Mr. Letendre argues that this modified instruction, which omitted the *Wentworth* language, "The test you must use is this," was inadequate in that it failed to impress upon the jurors their obligation to use the reasonable doubt standard as defined for them by the trial judge. We find this argument unpersuasive.

■■ It is axiomatic that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146–47 (1973); *see State v. Bundy*, 130 N.H. at 383, 539 A.2d at 713; *State v. Brown*, 128 N.H. 606, 615, 517 A.2d 831, 837 (1986). In this case, although it is true that the trial court omitted the specific language of *Wentworth* instructing the jurors to use the reasonable doubt standard as defined for them, the charge as a whole adequately informed the jurors of their duty to follow the law as the judge explained it. More specifically, at the beginning of his charge, the trial judge informed the jurors that they were to decide the facts and reach a verdict based on "the law as I shall explain it." The judge reiterated this admonition later on in the charge when he explained that "[i]f a lawyer says anything about the law that differs from *the law as I shall explain it*, you will disregard what the lawyer says and you will consider *the law as I explain it*." (Emphasis added.) The judge again impressed upon the jurors their responsibility in this regard when he told them they "must decide the case on the evidence and the rational inferences to be drawn from the evidence and on *the law as I am explaining it*." (Emphasis added.) Given the fact that the trial judge, in at least three separate instances, directed the jurors to follow the law as explained to them, the omission of this language from the reasonable doubt portion of the charge did not prejudice the defendant and does not require reversal.

The defendant's final argument concerning the reasonable doubt instruction is that its brevity prevented the jurors from having the

opportunity to mull over and absorb the definition. He claims that "[s]uch an important concept deserves more" than two short sentences. Although he cites no case in support of his position, Mr. Letendre contends that the *Wentworth* instruction is designedly repetitive, that "[i]ts deliberate measured pace allows the jurors the opportunity to think about the parameters of the concept as they listen to the words," and that "*Wentworth* requires an expansive, not truncated, explanation."

■■■ The purpose of the trial court's instructions "'is to state and explain to the jury, in clear and intelligible language, the rules of law applicable to the case.'" *State v. Saucier*, 128 N.H. 291, 299, 512 A.2d 1120, 1126 (1986) (quoting *Fletcher v. Kunze*, 125 N.H. 277, 279, 480 A.2d 141, 142 (1984)); *State v. Skaff*, 94 N.H. 402, 407, 54 A.2d 155, 159 (1947). As long as the charge given, in the context of the instructions as a whole, fairly covers the issues and law of the case, reversal is unwarranted. *State v. Dennehy*, 127 N.H. 425, 430, 503 A.2d 769, 772 (1985) (citations omitted); *State v. Bird*, 122 N.H. 10, 15, 440 A.2d 441, 443 (1982). We hold that in this case the charge as a whole conveyed the correct concept of reasonable doubt to the jury. Accordingly, the alleged brevity of the instruction is not a basis for disturbing the conviction. We also note that in this instance the trial judge gave each juror a typed copy of his instructions. They were able to read along with the judge and had ample opportunity to re-read, digest, and reflect upon the meaning of the concept.

We now turn our attention to the defendant's final argument on appeal, that the trial court erred in allowing the State to question him about the truthfulness of other witnesses. The defendant, who chose to take the stand in his own defense, claims that a series of questions asked of him during cross-examination was misleading and improper. He argues that the questions as posed forced him to comment on the veracity of other witnesses' testimony, and compelled him to admit "that the complainant had no reason to lie and in effect that she was telling the truth." The defendant claims that his answers to this line of questioning were devastating to his case and warrant reversal. The State, on the other hand, argues that although effective, the questions were not improper or misleading. In the alternative, it is the State's position that any error was harmless beyond a reasonable doubt.

The following questions, pertaining to any possible motive to lie on the part of the victim, were asked of the defendant at trial.

"Q. Have you ever seen [the victim] before?

A. No, I have not.

Q. You don't know her at all, do you?

A. No, I do not.

Q. So then I assume that, that's—that it's fair to say you had (sic) never had any disagreements with her, correct?

A. Correct.

Q. And she would have no reason to come in here and lie about you, would she?

[Defense Counsel]: I object to that. Asking him to speculate on motives of another witness. That's up to the jury, your Honor.

THE COURT: Overruled.

A. Could you repeat the question?

Q. She would have no reason to come in here and sit in front of this jury and lie about you, would she?

A. No.

Q. And you recall my, my direct examination of [the victim], don't you?

A. I do.

Q. And I asked her to look at you during the course of that direct examination, didn't I?

A. Yes.

Q. And did she do that?

A. Yes.

Q. She looked you right in the eye, didn't she?

A. Yes.

Q. And the lady who you say you've never known before and have had no disagreements with pointed you out and identified you as being the person who was in her bedroom that night?

A. Whenever someone is sitting in the defendant's chair, the person on the stand automatically says, yuh, that was him."

In addition, a similar set of questions was asked of the defendant regarding any reasons the cab driver might have had to lie on the witness stand.

"Q. You, did you recognize [the cab driver] when he came in here to testify?

A. No.

Q. You had (sic) never seen him before, have you?

A. I didn't recognize him.

Q. You've never had any disagreements with him then, I assume?

A. No.

Q. And he would then have no reason to come in and tell lies concerning you, would he?

[Defense Counsel]: Your Honor, I'm going to object again; same basis. He's asking my client to speculate on another witness's motives. I don't think that's proper.

THE COURT: All right. Overruled.

A. Continue.

Q. Pardon me?

A. Could you repeat the question?

Q. He wouldn't have any motivation then since you didn't know him and never had any disagreements with him to come in here and point the finger at you and, and lie about you, would he?

A. No."

Upon review of the preceding allegedly offending series of questions, we find that the defendant's position lacks merit. The questions asked did not compel Mr. Letendre to comment on the veracity of these two witnesses. He was not asked whether the victim and the cab driver were telling the truth. He was simply asked whether he knew if either of the two witnesses had any reason or motivation to lie to the jury. Such questioning has been approved by this court in the past. See *State v. Bruce*, 132 N.H. 465, 468, 566 A.2d 1144, 1146 (1989) (objection to question, "Do you know of any reason why your daughter would lie about . . . you?," was properly overruled).

Because we hold that the questions as posed to the defendant did not require him to comment on the veracity of other witnesses, we do not at this time reach a decision as to the propriety of such questioning.

*Affirmed.*

HORTON, J., did not sit; BATCHELDER, J., concurred specially; the others concurred.

BATCHELDER, J., concurring specially: While I agree with the majority's holding, I would go one step further and formally recognize that which is all too clear: the *Wentworth* instruction should merely be viewed as one example of an instruction that apprises the jury of the concepts of reasonable doubt in a fair and even-handed manner. To the extent that the *Wentworth* instruction presents such an example, it is my view that the trial court should be free to deviate from its language so long as it does so in a comprehensive and coherent fashion capturing the essential concepts of fairness and the presumption of innocence. It follows that to the extent *Wentworth* is viewed as requiring slavish adherence to its content and rote delivery, it should be reversed.