THE STATE OF NEW HAMPSHIRE

v.

W.J.T. ENTERPRISES, INC.

AND

WILLIAM J. THIBEAULT

December 18, 1992

*John P. Arnold,* attorney general (*Jeffrey A. Meyers,* assistant attorney general, on the brief and orally), for the State.

*Kenna, Johnston, Craighead & Sharkey, P.A.,* of Manchester (*Rodkey Craighead, Jr.* on the brief and orally), for the defendants.

BATCHELDER, J.   The defendants, W.J.T. Enterprises, Inc. (the corporation) and William J. Thibeault, its president, were convicted after a jury trial in Superior Court (*Dunn,* J.) of operating a private solid waste transfer facility without a permit, in violation of RSA 149-M:10 (current version at RSA 149-M:10 (Supp. 1991)). On appeal, they argue that a city official's testimony of his conversation with the owner of the site was inadmissible hearsay, that the court's answer to a jury question invaded the province of the jury, and that the court did not have authority to sentence the defendants to clean up the site. We affirm.

In the spring of 1988, Ruth Veno, who had lived adjacent to a sand pit at 85 Sargent Road in Manchester for over twenty years, began noticing large trucks dumping construction debris into the pit. Dis-

turbed by the noise and conscious of an increasing population of rats, she contacted her alderman, Valerie Cook, who visited the site in the spring of 1988, and apprised several city officials of the activity at the site. Beginning in August 1988, Alderman Cook returned to the site about once a month and repeatedly saw trucks stenciled with "W.J.T." dumping large pieces of building demolition debris.

In response to the alderman's contact, the city, and ultimately the State, communicated with the owner of the site and with the defendants, including a letter and conversation between Francis Thomas, Manchester deputy public works director, and Thomas McCarthy, the owner of the site. From late September to mid-November 1988, several city and State officials visited the site. They saw large piles of demolition material; machinery such as a large excavation backhoe and a screening device; piles of brick, concrete, wood timbers, and scrap metal; and the operation of vehicles of the corporation. On several occasions, the officials confronted Thibeault with the fact that there had been complaints about the dumping and that dumping without proper State and local permits is illegal. Thibeault offered a number of excuses, mostly that he had permission for the dumping from a variety of sources; he also told several officials that he would clean up the site.

On March 14, 1989, the Manchester police, accompanied by a member of the State Attorney General's office and a Manchester highway department official, went to 85 Sargent Road, where they observed the operation of the corporation's equipment. The police ordered Thibeault and the corporation to cease operations at the site.

The corporation was indicted on two felony charges of operating a private solid waste transfer facility without a permit. One indictment charged the company with committing the offense from May 1988 through February 1989, the other for the offense on March 14, 1989. Thibeault was charged with a misdemeanor in his individual capacity for the same offenses. Both defendants were convicted for the March 14, 1989 offense and acquitted on the charges for the earlier period. This appeal followed.

The defendants first argue that the testimony of Francis Thomas, the deputy public works director, concerning his conversation with Thomas McCarthy, the owner of the site, who died prior to trial, was inadmissible hearsay. They assert in their brief that "[t]he clear implication of this testimony is that Mr. Thibeault was indeed contacted by Mr. McCarthy and was advised by Mr. McCarthy to stop using the land site and to clean it up because the Deputy Public Works Director for the City of Manchester had advised McCarthy that the appro-

priate permits were a prerequisite to the operation of this kind of facility." We disagree.

■■ "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial . . ., offered in evidence to prove the truth of the matter asserted." N.H. R. Ev. 801(c). Such a statement is not inadmissible hearsay, however, when it is offered to prove a fact other than its truth. *See State v. Varagianis*, 128 N.H. 226, 230, 512 A.2d 1117, 1120 (1986). Whether a statement is hearsay is an issue for the trial court, and the trial court's ruling will not be disturbed on appeal unless it is clearly erroneous. *State v. Sampson*, 132 N.H. 343, 346, 565 A.2d 1040, 1042 (1989).

In its case-in-chief, the State called Thomas to testify. During his testimony on redirect, the State asked the following questions:

"Q. Mr. Thomas, you've stated that you had at least one conversation with Mr. Thomas McCarthy, the owner of the property, is that correct?

A. Yes.

Q. At the end of that conversation, what was your understanding with respect to what was going to happen at 85 Sargent Road?"

Over a contemporaneous objection by defense counsel, the trial court permitted Thomas to reply:

"[A.] Okay, after talking with Mr. McCarthy, I understood that he was going to contact Mr. Thibeault and have Mr. Thibeault clean up the site, to restore it to a condition that it was in prior to the dumping taking place."

The State maintains that this testimony was not offered to prove the truth of the matter asserted, but rather to "establish why Francis Thomas took no further action in regard to the Sargent Road site." During the State's case, Thomas testified as to the actions he took concerning the demolition debris at Sargent Road after learning of its presence in 1988. He testified that he wrote to both the property owner and to the New Hampshire Department of Environmental Services, inspected the site himself, sent the chief inspector of the Manchester highway department to inspect it, and spoke to Thibeault concerning his activities at the site.

■■ Looking at the testimony in this context, we agree with the trial court that it was elicited to offer an explanation to the jury of why Thomas, a city official who was aware that the site was in viola-

tion of State law, took no further action after his conversation with the property owner. "Where an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, *but without reference to the truth of the matter asserted,* the hearsay rule does not apply." *State v. Gooden,* 133 N.H. 674, 678, 582 A.2d 607, 610 (1990) (quotation omitted). We also note that although the defendants may have been entitled to a limiting instruction regarding the purpose for which the testimony was admitted, none was requested. *See State v. Ellison,* 135 N.H. 1, 7, 599 A.2d 477, 481 (1991).

The defendants next argue that the court's answer to a jury question invaded the province of the jury and impermissibly amended the substance of the crimes charged. They maintain in their brief that "[t]hrough its answer to the jury's question, the trial court, not the jury, determined the essential element of 'knowingly.'"

■■■ "The scope and wording of jury instructions is generally within the sound discretion of the trial court." *State v. Wood,* 132 N.H. 162, 164, 562 A.2d 1312, 1314 (1989). In determining the adequacy of jury instructions, this court has held on occasions too numerous to mention that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *State v. Letendre,* 133 N.H. 555, 558, 579 A.2d 1223, 1225 (1990) (quotation omitted). We will not reverse the trial court unless the instructions did not fairly cover the issues of law in the case. *Id.* at 559, 579 A.2d at 1225.

Two hours after deliberations began, the jury submitted the following question to the court: "Can we find the defendant guilty if he didn't know he had to have a permit?" The court responded by giving the jury a copy of RSA 626:3, Effect of Ignorance or Mistake. We find no error in the trial court's response.

■■ In its initial instructions, the court charged the jury as follows:

"The State must prove beyond a reasonable doubt with respect to each charge in each indictment and information that the defendants, W.J.T. Enterprises and William J. Thibeault, one, *knowingly* operated; two, a solid waste facility without a permit issued by New Hampshire Department of Environmental Services."

(Emphasis added.) The defendants argued at trial, and continue to maintain on appeal, that the word "knowingly" modifies both "operated" and "without a permit." They assert that in order to be guilty,

they had to know not only that they were operating a solid waste facility without a permit, but also that a permit was required to legally operate a solid waste facility. Knowledge of the permit *requirement*, however, is not an element of the offense. *Cf. United States v. International Min'ls Corp.*, 402 U.S. 558, 563 (1971) ("knowingly" in statute prohibiting shipping of corrosive liquids without proper labelling pertained to knowledge of the facts and did not signal exception to general rule that ignorance of the law is no excuse). Accordingly, the supplemental instruction accurately stated the law: ignorance of the law is no excuse. *State v. Stratton*, 132 N.H. 451, 457, 567 A.2d 986, 990 (1989).

The final issue on appeal concerns the defendants' sentences. The corporation was fined $25,000; Thibeault was fined $25,000 and sentenced to one year imprisonment with six months suspended. The court also ordered Thibeault to "clean up the land at the site in issue to the satisfaction of the department of Environmental Services . . . or the suspended portion of the . . . sentence shall be brought forward." Thibeault contends that the sentence ordering him to clean up the land is outside the authority of the court and is impermissibly indeterminate.

██ ██   RSA 651:2 (1986 & Supp. 1991) and RSA 651:20 (current version at RSA 651:20 (Supp. 1991)) "demonstrate a continuing intent by the legislature to provide the sentencing judge with options to adapt his [or her] sentence to a particular individual in the manner best suited to accomplish the constitutional objectives of punishment, rehabilitation and deterrence." *State v. Burroughs*, 113 N.H. 21, 24, 300 A.2d 315, 317 (1973). "Within these parameters, the judge has broad discretion to assign different sentences, suspend sentence, or grant probation . . . ." *State v. Evans*, 127 N.H. 501, 505, 506 A.2d 695, 698 (1985).

Thibeault misconstrues the sentence imposed by the trial court in this case. Much of his argument relates to the statutory provisions for restitution as an aspect of sentencing. *See* RSA 651:62, :63. In this case, however, restitution was not involved; restitution was neither ordered, nor made a condition of probation. Thibeault was not ordered unconditionally to clean up the Sargent Road site. He was merely offered the option of cleaning up the site instead of serving the second six months of his one-year sentence. As such, the cleanup was a conditional exemption from punishment, not an order for restitution.

We find no abuse of discretion in the trial court's choice of sentence. The defendants are not newcomers to the State's environmental enforcement procedures. In the two years prior to the crimes for which they were convicted, they received four administrative orders from the State Department of Environmental Services indicating that they had, at four different sites, illegally deposited solid waste in violation of the solid waste management act, RSA chapter 149-M. In addition, before the present charges were brought against the defendants, the State had filed six separate civil cases and two criminal cases against either Thibeault or his company for the illegal dumping of demolition debris at ten different sites in the State.

Moreover, at the sentencing hearing Thibeault's attorney acknowledged his client's desire to clean up the site:

> "It has never been the position of [Thibeault] at this point that he didn't want to appropriately and properly clean up [the site]. I believe that that aspect was negotiated in terms of the prior discussions that [Thibeault's former attorney] had on behalf of WJT Enterprises and Bill Thibeault with [the attorney general's office]. It remains Bill's desire here today to clean up this land."

"Suspension of sentences is not obligatory. The sentence in the present case was suspended either on the condition imposed, or not at all." *Couture v. Brown*, 82 N.H. 459, 641, 135 A. 530, 531 (1926). Because of Thibeault's prior violations of the State's environmental laws and because he offered to clean up the site as part of his sentence, the trial court acted within its sound discretion by conditioning suspension of half of Thibeault's sentence on the cleanup of the site.

Finally, although Thibeault contends that the order to clean up the site "to the satisfaction of the [d]epartment of environmental services" is indeterminate, the department of environmental services has adopted clear rules governing the management of solid waste facilities. N.H. ADMIN. RULES, Env-Wm 100–300, 2100–2800. Consequently, the trial court's order is both determinate and reasonable.

*Affirmed.*

All concurred.