Hillsborough
No. 79-440

STATE OF NEW HAMPSHIRE

v.

PATRICK MOREHOUSE

November 13, 1980

*Gregory H. Smith*, acting attorney general (*Peter W. Heed*, assistant attorney general, orally), for the State.

*Bruce E. Kenna*, of Manchester, by brief and orally, for the defendant.

DOUGLAS, J. The main issue in this case is whether the defendant's right to due process of law was violated in imposing an enhanced sentence. The defendant alleges three violations of his due process rights. First, that he was not afforded a jury determination beyond a reasonable doubt of the facts relevant to the enhanced sentence. Second, that he was not given adequate notice of the possibility of an enhanced sentence for manifesting exceptional cruelty or depravity as provided for in RSA 651:6 I(d). Finally, that the court failed to enunciate specific findings of fact justifying an enhanced sentence. We hold that there has been no violation of the defendant's right to due process of law.

On Friday, September 22, 1978, the victim, Darlene, spent the evening with some friends at Poor John's Pub in Manchester. She danced, consumed three or four drinks, and left at approximately 12:30 a.m. on September 23. As she walked toward her parked car,

a stranger in a small red sports car asked her directions. Darlene approached the car and stated that she could be of no help. The man inside the car, the defendant, identified himself as Patrick, stated that he was new to the area and lonely, and asked her to go for coffee with him. She declined the offer, stating that she was on her way to meet some friends, and then entered a nearby telephone booth to phone an acquaintance. As she left the booth, ·the defendant approached her and again requested that she accompany him for a cup of coffee. Darlene once again declined the offer, but the defendant continued to plead with her. She finally acquiesced to his pleas and agreed to drive his car to the spot where she had parked her own. She parked the defendant's car behind hers, exited, and said goodnight. As Darlene entered her vehicle, the defendant, who had followed her, shoved her to the passenger side. As she struggled, he grabbed her wrists and crawled over her to the passenger side. She then leaned back against the driver's door, and the defendant ordered her to remove all her clothes. She refused, and he ripped her blouse down the front. The defendant grabbed Darlene in a headlock position with his left arm, with her head against his body. He then struck her repeatedly on the top of the head with a metal hammer with such force that she heard echoes with each blow. She does not recall how many times she was hit, nor how long the attack lasted. When the defendant released her, she said: "You hurt me, Patrick", and passed out.

The victim awakened after an unknown period of time. She had difficulty seeing because her left eye had swollen shut and her right eye was only partially open. After locking the car doors she attempted to drive out of the area and, after traveling a short distance, struck a parked car. A policeman, who witnessed the accident, went to her aid, and she was taken to the hospital for treatment.

A jury found the defendant guilty of attempted first-degree murder, RSA 629:1. At the sentencing hearing, the State requested the defendant not be given the normal maximum sentence for attempted murder (15 years, RSA 651:2), but rather an enhanced sentence pursuant to RSA 651:6 I(d) for manifesting "exceptional cruelty or depravity in inflicting . . . serious bodily injury on the victim of his crime." The Trial Court (*Goode*, J.) accepted the recommendation and imposed the maximum sentence of thirty years with a ten-year minimum, saying that the defendant had manifested exceptional cruelty or depravity in inflicting serious bodily injury to his victim. The court denied the defendant's motion to reconsider sentence, and reserved and transferred all exceptions.

The defendant contends that the State failed to present sufficient evidence that he intended the death of Darlene when he assaulted her. In weighing the defendant's exception to the sufficiency of the evidence, our task is to determine whether the evidence on the record reasonably supported a finding of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). In so doing, we must view all the evidence, and any reasonable inferences which may be drawn from it, in the light most favorable to the State. *Id.* at 319; *State v. Belkner*, 117 N.H. 462, 472, 374 A.2d 938, 944 (1977).

The following evidence was adduced at trial. The defendant carried a large metal autobody hammer when he confronted Darlene in her car. After a brief scuffle in the vehicle, he grabbed her and began pounding her repeatedly over the head with the hammer. The resulting injuries were massive. Dr. Ali Ata testified that Darlene suffered multiple lacerations extending from her forehead to the vertex of her scalp, and also suffered multiple lacerations on her face and nose. He further testified that the bridge of her nose was large and swollen and there was evidence of fractured facial bones. Both of Darlene's eyes were swollen shut. Both her nose and a tooth were broken, and she had lacerations resulting in a complete loss of tissue, a total distortion of the contour of her nose, and disfiguring scars that would require plastic surgery.

The defendant's claim that some of these injuries may have been caused by the victim's automobile accident that occurred subsequent to his assault was refuted by the testimony of the police officer witnessing the collision. The officer testified that Darlene's vehicle was travelling so slowly that it merely pushed the parked sports car with which it came in contact. It was his opinion that her injuries were not the result of the accident.

The defendant contends that because he voluntarily ceased his assault of the victim, the only logical inference that can be made is that he did not intend to cause her death. This argument is without merit. Darlene passed out when the defendant stopped striking her. It could reasonably be inferred from the defendant's actions that he believed that the massive injuries he inflicted on his victim had succeeded in killing her. Further, even if the defendant voluntarily ceased striking Darlene with a hammer before he believed he had caused her death, that does not preclude the jury from reasonably inferring that the defendant intended to kill her when he began the assault. We hold that there was

sufficient evidence which could reasonably  support a finding of guilt beyond a reasonable doubt of attempted first-degree murder.

We now address the defendant's allegation that his right to due process of law has been violated. The defendant argues that the court's finding of cruelty or depravity was a finding of a separate element of an offense and not merely a sentencing criterion, *see State v. Champagne*, 119 N.H. 118, 399 A.2d 287, 289 (1979), and contends that because he only received protection of his due process rights commensurate with a sentencing hearing, the court committed reversible error. We hold that the court's finding was a valid sentencing criterion.

The defendant relies heavily on *Mullaney v. Wilbur*, 421 U.S. 684 (1975). *Mullaney* demonstrates that what may at first appear to be used as a sentencing criterion was actually a finding by the court of another element of a more serious crime. In *Mullaney*, the State of Maine charged a man with murder but the defendant contended that he committed the killing in the heat of passion, and was only guilty of manslaughter. Maine law *presumed* malice aforethought in all killings unless the defendant proved beyond a reasonable doubt that the killing occurred in the heat of passion. The State contended that once a felonious homicide was proven beyond a reasonable doubt, the degree of intent merely became a sentencing consideration for the court. The United States Supreme Court held that this procedure violated the defendant's right to due process of law because the prosecution was not required to prove every element necessary to constitute the crime charged. *Id.* at 704.

In the case before us, the defendant would have us read *Mullaney* as requiring a jury determination beyond a reasonable doubt of *any* fact that increases the severity of a sentence, reasoning that any time a fact increases sentence length, that fact is in reality an element of a new, greater offense and not a sentencing consideration. No such reading is justified. In *Mullaney*, the United States Supreme Court was seeking to prevent states from circumventing due process considerations by redefining the elements that constitute different crimes, characterizing them as factors that bear solely on the extent of punishment. *Id.* at 698. A trial court has broad discretion to determine sentence length. *Williams v. New York*, 337 U.S. 241 (1949), and *Mullaney* was in no way meant to restrict that discretion. *See generally* Note, *The Constitutionality of Statutes Permitting Increased Sentences for Habitual or Dangerous Criminals*, 89 HARV. L. REV. 356, 371 (1975).

In *Proffitt v. Florida*, 428 U.S. 242 (1976), the United States Supreme Court upheld a capital sentence based in part on the trial judge's determination at a sentence hearing that the defendant's crime had been especially heinous, atrocious or cruel. The life sentence normally meted out was increased to the sentence of death without a jury determination beyond a reasonable doubt of all the facts considered by the trial judge. Though speaking specifically of capital punishment, *Proffitt* makes a strong case for trial court judges retaining certain sentencing powers. The Court stated that "judicial sentencing should lead if anything to even greater consistency in the imposition at the trial court level of capital punishment since a trial judge is more experienced in sentencing than a jury and therefore is better able to impose sentences similar to those imposed in analogous cases." *Id.* at 252.

Clearly not all factors considered by a trial judge that result in an increased sentence require a jury determination beyond a reasonable doubt. *See, e.g.*, RSA 651:6 I(c) (two prior prison sentences). In the case before us, because the trial court's finding that the defendant manifested exceptional cruelty or depravity was a valid sentencing consideration, there was no violation of the defendant's right to due process of law. *See Specht v. Patterson*, 386 U.S. 605, 608 (1967).

The defendant's argument that he was not given adequate notice that he was subject to an enhanced sentence is largely obviated by the fact that exceptional cruelty or depravity is a valid sentencing consideration in our statutes. The stringent notice requirements delineated in both the United States Constitution, U.S. CONST. Amends. V and VI, and the New Hampshire Constitution, N.H. CONST. pt. 1, art. 15, clearly refer to *crimes* charged by the State. The Supreme Court recognized that relaxed due process considerations apply in sentence hearings in order to make "progressive efforts to improve the administration of criminal justice." *Williams v. New York*, *supra* at 251. However, this court is of the opinion that the defendant in this case was provided adequate notice of the possibility of an enhanced sentence. Not only is the enhanced sentence provision clearly delineated in the New Hampshire statutes as applicable to all crimes, but prior New Hampshire case law decided that a trial judge may utilize the provisions of RSA 651:6 at a sentence proceeding. *See, e.g.*, *State v. Lavallee*, 119 N.H. 207, 213, 400 A.2d 480, 484 (1979); *State v. Colby*, 116 N.H. 790, 796, 368 A.2d 587, 592 (1976). For these reasons, we decline to hold that the defendant was not provided adequate notice.

The defendant's final argument is that the trial court's failure to specify the facts upon which it relied in sentencing the defendant violated RSA 651:6 I(e) and deprived him of due process of law.

RSA 651:6 I(e) requires that findings under that paragraph be incorporated in the record. The trial court found as a fact that the defendant had "manifested exceptional cruelty or depravity in inflicting serious bodily injury to the victim of [his] crime."

■ The defendant correctly points out that the terms "cruelty" and "depravity" have not been precisely defined by New Hampshire case law. Because the statute does not indicate otherwise, we ascribe to the words their usual and common meaning. RSA 21:2. "Cruel" is defined as "disposed to inflict pain . . . in a wanton, insensate . . . manner" or "given to killing and mangling or to tormenting." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 546 (1961). "Depraved" means "marked by debasement." *Id.* at 606.

■ In *Godfrey v. Georgia*, 100 S. Ct. 1759 (1980), the Supreme Court decided a case of murder by shotgun under a Georgia statute permitting imposition of the death penalty if the offense was "outrageously or wantonly vile, horrible or inhuman." GA. CODE ANN. § 27-2534.1(b)(7). The Court reversed the conviction because it could not find the crimes "to have reflected a consciousness materially more 'depraved' than that of any [other] person guilty of murder." *Godfrey*, 100 S. Ct. at 1767. In other words, not every shooting or knifing is *per se* sufficient, and specific articulable facts must be detailed to sustain the statutory words. In the case at hand, the record is so replete with evidence that supports the trial court's conclusion on "cruelty" or "depravity" under RSA 651:6 I(d), that no remand is necessary. In the future, we require that trial judges enunciate *specific* findings of *fact* based upon the evidence that supports their finding of exceptional cruelty or depravity so as to enhance a sentence.

For the foregoing reasons, we affirm the holding of the trial court.

*Affirmed.*

All concurred.

## ON REHEARING

■ PER CURIAM. After the foregoing decision was filed, the defendant moved for rehearing on several grounds. One of these

was our asserted error in denying defendant's motion, filed well after oral argument, that we consider, as an additional issue on appeal, the trial court's charge on the issue of reasonable doubt. We granted rehearing solely on this ground. Because defendant took a timely exception at trial to the judge's charge on reasonable doubt, and because that charge was virtually identical to the charge that required reversal in *State v. Aubert*, 120 N.H. 634, 421 A.2d 124 (1980), we reverse and remand for a new trial.

*Reversed and remanded.*