NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————————

Hillsborough-northern judicial district
Case Nos. 2019-0413
            2020-0573
            2022-0108
            2022-0191
Citation: State v. Chalpin, 2024 N.H. 36


THE STATE OF NEW HAMPSHIRE

v.

GABRIEL CHALPIN

Argued: November 14, 2023
Opinion Issued: July 12, 2024


John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Sam M. Gonyea, assistant attorney general, on the brief and orally), for the State.


Reis & O'Keefe, PLLC, of Portsmouth (James B. Reis on the brief and orally), for the defendant.


DONOVAN, J.

[¶1] The defendant, Gabriel Chalpin, appeals his convictions, following a jury trial in the Superior Court (Brown, J.), on one count of first degree assault,

enhanced for manifesting exceptional cruelty or depravity in inflicting serious bodily injury, see RSA 631:1, I(a) (2016); RSA 651:6, I(c) (2016), and one count of second degree assault for recklessly causing bodily injury to another under circumstances manifesting extreme indifference to the value of human life, see RSA 631:2, I(c) (2016). He argues that the trial court erred by: (1) providing the jury with an inadequate definition of the word "cruelty"; (2) determining that there was sufficient evidence to prove, with respect to the enhanced first degree assault charge, that the defendant "manifested exceptional cruelty or depravity in inflicting serious bodily injury" on the victim; (3) determining that there was sufficient evidence to prove, with respect to the second degree assault – extreme indifference charge, that the defendant acted "under circumstances manifesting extreme indifference to human life"; and (4) determining that there was sufficient evidence to prove that the defendant committed two separate acts of assault.

[¶2] The State cross-appeals, arguing that the trial court erred in determining that there was insufficient evidence to prove four separate assault convictions. We conclude that: (1) the jury instruction on the definition of "cruelty" was sustainable; (2) there was sufficient evidence to sustain both the enhanced first degree assault and second degree assault – extreme indifference convictions; and (3) there was sufficient evidence to support four separate assault convictions. Accordingly, we affirm in part, reverse in part, and remand.

## I. Facts

[¶3] The jury could have found the following facts. The defendant and the victim began a romantic relationship in late 2015 and started living together in October 2017. On the evening of February 2, 2018, after returning home from seeing a movie, the victim went to bed while the defendant watched television in the living room. Sometime after the victim went to bed, the defendant woke the victim up, and, once awake, the victim expressed a desire to go outside to smoke a cigarette, but the defendant did not allow her to do so.

[¶4] When the victim attempted to leave the bed, the defendant began restraining her from behind while she was lying down.[1] The victim "struggled to try to get away from him," but the defendant "grabbed tighter" and "started putting his arm around [the victim's] neck," causing her to have trouble breathing. Eventually, the victim and the defendant slid off the bed and fell onto the floor. From there, the defendant "grabbed [the victim] by the hair and [dragged her] into the main room of the house," pulling out a "large chunk" of her hair in the process. Once in the main room, the defendant started hitting

---

[1] The record suggests that the defendant was angry with the victim due to his jealousy toward the victim's prior romantic partners and male friends, which was exacerbated by the defendant's consumption of alcohol and prescription medication.

2

the victim "[p]retty much everywhere," though mostly on the "torso, ribs, [and] legs."

[¶5] Throughout the night, the defendant hit the victim on at least four separate occasions. In particular, the victim recalled that, during the course of the night, the defendant delivered what the victim believed to be a "liver shot" when the victim and the defendant were standing by the back door. The defendant, who was a trained boxer, had previously told the victim that a "liver shot" is a technique that boxers use to incapacitate an opponent for about ten seconds. In addition, the victim recalled that when she was sitting on the love seat with her knees to her chest "trying to protect [herself]," the defendant approached her and punched her directly on a surgical incision on the left side of her body that was still healing from a recent procedure.

[¶6] After the incision strike, the victim fled the house wearing only a torn long-sleeve t-shirt and socks. Not knowing where to go at that time of night, and because it was "very cold" and dark outside, the victim returned to the house. While she was walking up the stairs and across the deck that led to the back door, the defendant punched her in the nose. Eventually, the defendant decided that it was time for them to go to bed. When they got into bed, the defendant hit the victim again "in [the victim's] right ribs."

[¶7] On February 4, the victim went to an urgent-care facility where staff recommended that she go to the hospital. The victim drove herself to a nearby hospital, where she was diagnosed with numerous injuries, including collapsed lungs, eight fractured ribs on both sides of her body, a broken nose, and a fractured spine.

[¶8] The defendant was indicted on four counts of first degree assault, enhanced for manifesting exceptional cruelty or depravity in inflicting serious bodily injury on the victim, see RSA 631:1, I(a); RSA 651:6, I(c), four alternative counts of second degree assault for causing serious bodily injury, see RSA 631:2, I(a) (2016), and four alternative counts of second degree assault for causing bodily injury under circumstances manifesting extreme indifference to the value of human life, see RSA 631:2, I(c). For each variant of assault, the indictments alleged that the defendant caused either serious bodily injury or bodily injury in the form of a fractured spine, a fractured rib, a fractured nasal bone, or pneumothorax of the lung — otherwise known as a collapsed lung.

[¶9] In March 2019, the court held a five-day jury trial. Witnesses for the State included the victim and several medical providers who treated the victim at the hospital. The defendant testified on his own behalf. At the close of evidence, when discussing jury instructions, the defendant asked the court to provide the jury with a definition of the word "cruelty" based upon the definition of "cruel" set forth in State v. Morehouse, 120 N.H. 738, 744 (1980). The court initially declined to provide a definition. During deliberation, the

3

jury issued a question regarding the appropriate definition of the word "cruelty." The defendant again requested the definition from Morehouse, but the court declined and instead provided the definition of "cruelty" from Black's Law Dictionary.

[¶10] The jury convicted the defendant on two counts of enhanced first degree assault, six counts of second degree assault, and two lesser charges of simple assault. The court sentenced the defendant on two counts of enhanced first degree assault with respect to the lung and rib injuries, and two counts of second degree assault – extreme indifference with respect to the spine and nasal bone injuries. The remaining convictions were merged for sentencing purposes.

[¶11] In July 2019, the defendant moved to dismiss all but one of the charges against him based upon the doctrine of double jeopardy, or, in the alternative, moved for a new sentencing hearing. The State objected. The court issued a written order in April 2020 denying the defendant's motion. After his counsel withdrew, the defendant, representing himself, subsequently filed a series of motions challenging the court's decision. Following a hearing in December, the court issued a written order in March 2021 agreeing that the four sentences violated the defendant's double jeopardy rights and scheduled another sentencing hearing. In January 2022, following the hearing, the court sentenced the defendant on one count of enhanced first degree assault and one count of second degree assault – extreme indifference. The defendant moved to reconsider, which the court denied. This appeal and cross-appeal followed.

II. Analysis

A. Definition of "cruelty"

[¶12] The defendant first challenges the trial court's response to the jury question asking for a definition of "cruelty." A response to a jury question is left to the sound discretion of the trial court. State v. Boudreau, 176 N.H. 1, 6 (2023). We review the court's response under the unsustainable exercise of discretion standard. Id. at 6-7. We review the trial court's answer to a jury inquiry in the context of the court's entire charge to determine whether the answer accurately conveys the law on the question and whether the charge as a whole fairly covered the issues and law in the case. Id. at 7.

[¶13] The defendant was indicted on four counts of enhanced first degree assault, all of which alleged that when perpetrating the assault, the defendant manifested "exceptional cruelty or depravity in inflicting serious bodily injury to" the victim. See RSA 631:1, I(a); RSA 651:6, I(c). During deliberation, the jury requested a definition of "cruelty." Defense counsel suggested that the court define "cruelty" based upon the definition of "cruel" from Morehouse. See Morehouse, 120 N.H. at 744 (defining "cruel" as "disposed to inflict pain . . . in

4

a wanton, insensate . . . manner" or "given to killing and mangling or to tormenting"). The court declined and instead provided the following definition of "cruelty" based upon the definition from Black's Law Dictionary: "The intentional and malicious infliction of physical or mental suffering upon living creatures, particularly human beings. As applied to the latter, the wanton, malicious and unnecessary infliction of pain upon the body or the feelings and emotions, abusive treatment, or inhumanity/outrage." (Quotation omitted.) See Black's Law Dictionary 475 (11th ed. 2019).

[¶14] On appeal, the defendant argues that the trial court erred by refusing to provide the definition set forth in Morehouse. The defendant essentially contends that we established a controlling definition of "cruelty" in Morehouse and that the definition from Black's Law Dictionary is a "diluted definition" that "lowered the quantum of evidence necessary for the jury to conclude that [the defendant] 'manifested exceptional cruelty or depravity.'" We disagree.

[¶15] The definition of "cruelty" set forth in Morehouse is not mandatory. See Morehouse, 120 N.H. at 744. When we establish a jury instruction that we require trial courts to use, we do so explicitly. See, e.g., State v. Wentworth, 118 N.H. 832, 838-39 (1978) (establishing a model jury instruction regarding the reasonable doubt standard and cautioning "trial judges to avoid attempts at further defining reasonable doubt"); State v. Aubert, 120 N.H. 634, 635-38 (1980) (concluding that the trial court's reasonable doubt charge, which added language to the charge set forth in Wentworth, was "improper," and requesting "that trial judges not add to the model charge" established in Wentworth); State v. Saunders, 164 N.H. 342, 352 (2012) ("[I]n a criminal case that includes direct evidence, trial courts should not include in instructions to the jury language indicating that the evidence need not exclude all rational conclusions other than guilt.").

[¶16] When a statute does not define a word, we ascribe to the word its usual and common meaning. See Morehouse, 120 N.H. at 744. Here, the trial court chose not to use the definition of "cruel" applied by this court more than 40 years ago. Instead, when responding to the jury question, the court used the definition from Black's Law Dictionary. See State v. Fischer, 165 N.H. 706, 714 (2013) ("[T]he purpose of the trial court's charge is to state and explain to the jury, in clear and intelligible language, the rules of law applicable to the case." (quotation omitted)). The trial court acted reasonably in opting to use the definition from Black's Law Dictionary, a "universally recognized law dictionary," after determining that the definition in Morehouse "creates more questions than it answers" given that it may "necessitate further definitions of its component words." We conclude that the trial court's instruction on the definition of "cruelty" is sustainable.

B. <u>Sufficient Evidence to Prove Enhanced First Degree Assault and Second Degree Assault – Extreme Indifference</u>

[¶17]  The defendant next argues that there was insufficient evidence to prove enhanced first degree assault and second degree assault – extreme indifference.  He contends that the wording of the indictments and the jury instructions only permitted the jury to consider the specific injury alleged in each indictment when determining whether the defendant manifested exceptional cruelty or depravity when inflicting serious bodily injury on the victim, <u>see</u> RSA 631:1, I(a); RSA 651:6, I(c), or manifested extreme indifference to the value of human life, <u>see</u> RSA 631:2, I(c).  Applying this interpretation of the indictments, the defendant argues that evidence of the specific injuries alleged in the indictments, without more, was insufficient to prove the enhancement to the first degree assault charges and the "extreme indifference" element of the second degree assault charges.

[¶18]  As a threshold matter, we disagree with the defendant's reading of the indictments.  <u>See</u> <u>State v. Nickles</u>, 144 N.H. 673, 679 (2000) (rejecting "the defendant's parsing of the indictment").  The indictments for enhanced first degree assault alleged that the defendant "purposely caused serious bodily injury to [the victim], his intimate partner at the time of the event, when he struck her with his hand causing a [fracture to her rib or traumatic pneumothorax of her lung], manifesting exceptional cruelty or depravity in inflicting serious bodily injury to [the victim] . . . ."  The clause "in inflicting serious bodily injury" refers to the bodily injury alleged in each indictment.  We agree with the State, however, that it does not logically follow that the full phrase "manifesting exceptional cruelty or depravity in inflicting serious bodily injury" means that "the strike from the defendant that resulted in the injury was the sole circumstance constituting the cruelty or depravity that the defendant manifested while inflicting the injury."  Indeed, we have consistently held that, when determining whether a defendant "manifested exceptional cruelty and depravity" when inflicting death or serious bodily injury on a victim, the fact finder may look to the "circumstances surrounding the assault."  <u>State v. Lavallee</u>, 119 N.H. 207, 213 (1979); <u>see also</u> <u>State v. Woodard</u>, 121 N.H. 970, 973 (1981) (holding that the trial judge "did not err in considering all of the circumstances surrounding the assault," including acts that occurred after the injury).

[¶19]  We reach a similar conclusion when considering the indictments charging the defendant with second degree assault – extreme indifference.  Those indictments allege that the defendant "recklessly caused bodily injury to [the victim], his intimate partner at the time of the event, under circumstances manifesting extreme indifference to the value of human life when he struck her with his hand causing" either a fracture to her nasal bone or a fracture to her spine.  As articulated above, we reject the defendant's parsing of the indictments, as each indictment clearly charged the defendant with injuring

6

the victim "<u>under circumstances</u> manifesting extreme indifference to the value of human life." (Emphasis added.)  We have previously held that it is "fallacious" to assume that "evidence of extreme indifference must be limited to the injuries resulting from the actual assaults committed."  State v. Bailey, 127 N.H. 416, 423 (1985) (holding that the statute requires proof that the "'circumstances' of the crime manifest extreme indifference" and that "neither the statute nor common sense limits the relevant circumstances to the injuries themselves").  Rather, "an attacker acts with 'extreme indifference' when he inflicts any degree of bodily injury on a victim and when the 'circumstances' of the attack demonstrate a blatant disregard for the risk to the victim's life." Fischer, 165 N.H. at 713 (quotation omitted).

[¶20]  The jury instructions for both enhanced first degree assault and second degree assault – extreme indifference also made clear that, when considering the exceptional cruelty and extreme indifference elements, the jury was not limited to considering only the injury alleged in each indictment.  With respect to the enhanced first degree assault charges, the court instructed the jury that the State must prove that the defendant "manifested exceptional cruelty or depravity in inflicting serious bodily injury."  When instructing the jury on the second degree assault – extreme indifference charges, the court informed the jury that the State must prove that "the bodily injury was inflicted <u>under circumstances</u> manifesting extreme indifference to the value of human life." (Emphasis added.)  Neither instruction limited the jury to consider just the alleged bodily injury when determining whether the defendant manifested exceptional cruelty or depravity or manifested an extreme indifference to the value of human life.  Moreover, after instructing the jury on the elements of second degree assault – extreme indifference, the court defined the phrase "'under circumstances manifesting extreme indifference to the value of human life'" to mean that "the [d]efendant's actions demonstrate a blatant disregard for the risk to the victim's life."  This definition permitted the jury to consider the defendant's multiple "actions" when determining whether he evinced a blatant disregard for the risk to the victim's life.

[¶21]  The defendant's argument that there was insufficient evidence to prove his enhanced first degree assault and second degree assault – extreme indifference convictions is premised upon his erroneous interpretation of the indictments and jury instructions.  Given our conclusion that the jury could consider the circumstances of the entire attack, we reject the defendant's argument.

C. <u>Double Jeopardy</u>

[¶22]  Lastly, the defendant argues that the trial court erred in determining that there was sufficient evidence to find that the events of the attack could be divided into two separate assaults.  He contends that the trial court should have found that the events were all part of one assault.  The State

7

cross-appeals, arguing that the trial court erred in determining that there was insufficient evidence to prove four separate assault convictions. We agree with the State.

[¶23] In March 2019, the trial court sentenced the defendant on two counts of enhanced first degree assault for the collapsed lung and the fractured rib, and two counts of second degree assault – extreme indifference for the fractured spine and fractured nasal bone. The defendant subsequently moved to dismiss all but one of the charges against him based upon the doctrine of double jeopardy. The defendant argued that the sustained injuries were the result of a single criminal act, and, therefore, the court improperly imposed multiple sentences for what amounted to a single assault.

[¶24] In an April 2020 order, the court denied the defendant's motion, explaining that the defendant's "assault of the victim involved innumerable distinct strikes to her body" and that the evidence adduced at trial "supports a finding that [the victim's] multiple injuries were caused by multiple distinct acts." The court found that "proof of the elements of the charged crimes required slight but distinct differences in evidence" and, accordingly, there was no double jeopardy violation.

[¶25] However, after a series of post-conviction motions in which the defendant continued to argue, in part, that the four convictions violated his rights against double jeopardy, the trial court, in a March 2021 order, reconsidered whether the evidence submitted at trial supported the total number of sentences imposed. The court determined that a criminal act "'consists of the sum of discrete actions that together constitute an offense,'" and that the factors to consider in identifying an "act" include time, location, or intended purpose. (Quoting State v. Farr, 160 N.H. 803, 809 (2010).)

[¶26] Applying these principles, the court ruled that, based upon the victim's testimony, the "events of the night in question can be readily divided into two separate assaults," with the first assault occurring from the initiation of the altercation to the point when the victim fled the house, and the second assault occurring when the victim returned to the house and the defendant re-initiated the physical altercation. The court found that there was sufficient evidence for the jury to conclude that the defendant caused the rib and/or lung injuries during the first assault and caused the nose injury during the second assault. The court also found, however, that there was insufficient evidence to support dividing the events of the evening into more than two assaults because the jury could not have determined when or where the other injuries occurred and whether they were the result of one or multiple blows delivered by the defendant. Accordingly, the court ruled that the record supported the sentences for one charge of enhanced first degree assault either for the rib or lung injuries, which occurred during the first assault, and for one charge of

second degree assault – extreme indifference for the injury to the nose, which occurred during the second assault.

[¶27] Resolving the parties' sufficiency arguments implicates the double jeopardy provisions of the State and Federal Constitutions. First, we must determine whether the act of assault can occur over a period of time, as the defendant argues, or whether the act of assault is a single, discrete action, as the State argues. Then, we must determine whether the evidence is sufficient to sustain the relevant number of convictions. Because the issue of double jeopardy presents a question of constitutional law, our review is de novo. Fischer, 165 N.H. at 715.

[¶28] When a defendant argues that his or her constitutional rights have been violated under both the State and Federal Constitutions, we consider the arguments first under our State Constitution and rely upon federal law only to aid our analysis. State v. Woodbury, 172 N.H. 358, 367 (2019). Part I, Article 16 of the New Hampshire Constitution and the Fifth and Fourteenth Amendments to the United States Constitution protect a defendant from being punished twice for the same offense.

> Multiple punishment cases come in two varieties. First, there are the so-called "double-description" cases, in which the issue is whether two statutes describe two separate offenses or are merely different descriptions of the same offense. Second, there are "unit of prosecution" cases in which the problem is not that the same course of conduct is proscribed by more than one statute but that a defendant's continuing course of conduct is fragmented into more than one violation of a single statutory provision.

State v. Ramsey, 166 N.H. 45, 51 (2014) (quotations, ellipsis, citations, and brackets omitted). The defendant asserts, and the State does not dispute, that this case is of the second variety.

[¶29] As a threshold matter, we conclude that the trial court correctly determined that the proper unit of prosecution under both RSA 631:1, I(a) and RSA 631:2, I(c) is the act of causing either serious bodily injury or bodily injury. In State v. Lynch, we held that the unit of prosecution for the form of simple assault criminalizing "[r]ecklessly caus[ing] bodily injury to another," RSA 631:2-a, I(b) (2016), was "each individual act of causing bodily injury to another," Lynch, 169 N.H. 689, 708 (2017). We extended this holding in State v. Castine to conclude that the unit of prosecution under RSA 631:1, I(d) (2016) is "each act of knowingly or recklessly causing serious bodily injury to a person under 13 years of age, not each individual injury." Castine, 173 N.H. 217, 220 (2020). We held that, to convict on two first degree assault charges under RSA 631:1, I(d), the State was required to prove that the victim's two injuries, as charged in two separate indictments, were caused by separate acts. Id.

9

Accordingly, we conclude that here, to convict on the two enhanced first degree assault charges and the two second degree assault – extreme indifference charges, the State was required to prove that the victim's collapsed lungs, fractured spine, fractured nose, and fractured ribs were caused by separate acts. See id.

[¶30]  We next consider what constitutes an act of assault.  The defendant argues that a criminal act "'consists of the sum of discrete actions that together constitute an offense,'" and that a court should consider time, location, or intended purpose when identifying an act.  (Quoting State v. Ford, 144 N.H. 57, 66 (1999).)  The State disagrees, arguing that it "only had to present evidence sufficient for a rational jury to conclude that each charged bodily injury was the result of a separate and distinct act of the defendant."  To determine whether the charged offenses violate the double jeopardy protections of our State Constitution in unit of prosecution cases, we examine whether proof of the elements of the crimes as charged will require a difference in evidence.  Id. at 368.

[¶31]  As relevant to this appeal, the State charged the defendant with two counts of enhanced first degree assault and two counts of second degree assault – extreme indifference.  To convict on each assault charge, the State was required to prove the specific injury alleged in each indictment — either a fractured rib, traumatic pneumothorax of the lung, fractured nasal bone, or fractured spine — and that each injury was caused by a separate act.  See Castine, 173 N.H. at 219-20.  Provided that the evidence submitted at trial included dissimilar facts to prove that the defendant committed four separate assaults, the defendant's double jeopardy rights were not violated.  See Woodbury, 172 N.H. at 368.  Given the difference in the evidence required to obtain each assault conviction, we conclude that the original four convictions — two for enhanced first degree assault and two for second degree assault – extreme indifference — do not violate the defendant's protection against double jeopardy under the State Constitution.  See id. at 361-62, 368-69 (concluding that there was sufficient evidence for the jury to distinguish the three assaults that occurred during a short altercation between the defendant and the victim); State v. Martinko, 171 N.H. 239, 243-45 (2018).

[¶32]  We reach the same conclusion under the Federal Constitution.  See Martinko, 171 N.H. at 245.  To determine whether a defendant is subject to multiple punishments for the same offense, in violation of the protection provided by the Federal Constitution, "we must determine the unit of prosecution intended by the legislature."  Id. (quotation omitted); see also State v. Wilson, 169 N.H. 755, 773 (2017).  "Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent.'"  Martinko, 171 N.H. at 245 (quoting Ohio v. Johnson, 467 U.S. 493, 499 (1984)).

[¶33] The first degree assault statute states, in pertinent part, that "[a] person is guilty of a class A felony if he . . . [p]urposely causes serious bodily injury to another."  RSA 631:1, I (2016).  The second degree assault statute provides, in pertinent part, that "[a] person is guilty of a class B felony if he or she . . . [r]ecklessly causes bodily injury to another under circumstances manifesting extreme indifference to the value of human life."  RSA 631:2, I (2016).  Although the term "bodily injury" is not defined in the Criminal Code, RSA 625:11, VI (2016) defines the term "[s]erious bodily injury" as "<u>any harm</u> to the body which causes severe, permanent or protracted loss of or impairment to the health or of the function of any part of the body."  (Emphasis added.)  Notably, "[s]erious bodily injury" is defined using the singular term: "any harm to the body . . . ."  RSA 625:11, VI.  Applying this definition to RSA 631:1, I(a), each act that causes "any harm to the body which causes severe, permanent or protracted loss of or impairment to the health or of the function of any part of the body" would support a separate crime of first degree assault.  RSA 625:11, VI; <u>cf</u>. <u>State v. Paulsen</u>, 143 N.H. 447, 449-50 (1999) (considering whether RSA 639:3, III (2016), which criminalizes endangering the welfare of a child or an incompetent person, criminalizes a course of conduct or a single act).  The same reasoning requires the same result with respect to RSA 631:2, I(c).

[¶34] Accordingly, we conclude that both RSA 631:1, I(a) and RSA 631:2, I(c) criminalize the distinct act of causing injury to another, rather than assault as a continuing course of conduct.  Indeed, our caselaw supports this interpretation.  <u>See, e.g.</u>, <u>Lynch</u>, 169 N.H. at 708 (holding that "the legislature intended for the unit of prosecution under RSA 631:2-a, I(b) to be <u>each individual act</u> of causing bodily injury to another" (emphasis added)); <u>Woodbury</u>, 172 N.H. at 368 (holding that three simple assault convictions did not violate double jeopardy because the defendant made unprivileged physical contact with the victim on three separate occasions); <u>cf</u>. <u>Castine</u>, 173 N.H. at 222, 225 (holding that two assault convictions violated double jeopardy in part because the evidence failed "to exclude the reasonable conclusion that the serious bodily injuries alleged in the two indictments were caused by a single blow").  The fact that a person may inflict numerous injuries on another in a relatively short period of time is of no consequence, provided that the State can prove each injury was caused by a distinct and separate act.[2]

---

[2] The defendant cites cases from several other jurisdictions in support of his argument that multiple convictions arising out of one continuous assault violate his rights against double jeopardy.  Those courts, however, considered their states' assault statutes and common law definitions of assault, as well as their relevant caselaw, in reaching this conclusion.  <u>See, e.g.</u>, <u>State v. Nixon</u>, 886 A.2d 475, 479-83 (Conn. App. Ct. 2005); <u>State v. Villanueva-Gonzalez</u>, 329 P.3d 78, 80-82 (Wash. 2014); <u>State v. Dew</u>, 864 S.E.2d 268, 273-75 (N.C. 2021).  Several of these courts also express concern that, to conclude otherwise, would allow a defendant to be convicted of assault "for every blow" thrown during an assault.  <u>Dew</u>, 864 S.E.2d at 275; <u>see also</u> <u>Nixon</u>, 886 A.2d at 481-82.  Our caselaw, however, already protects a defendant from such prosecution by

11

[¶35]  We next consider whether there was sufficient evidence in the record for the jury to conclude, beyond a reasonable doubt, that the defendant committed four separate and distinct acts that resulted in the four indicted injuries.  A challenge to the sufficiency of the evidence raises a claim of legal error; therefore, our standard of review is de novo.  Id. at 220.  To prevail in a challenge to the sufficiency of the evidence, the defendant bears the burden of proving that no rational trier of fact, viewing the evidence in the light most favorable to the State, could have found guilt beyond a reasonable doubt.  State v. Kelley, 159 N.H. 449, 454-55 (2009).  When reviewing the evidence, we examine each evidentiary item in the context of all the evidence, not in isolation.  Id. at 455.

[¶36]  At the outset, we agree with the State that the evidence that the defendant caused the victim's injuries by committing separate acts was not solely circumstantial and, thus, the evidence was not required to exclude all reasonable inferences other than guilt.  See Castine, 173 N.H. at 220.  Direct evidence "is evidence which, if accepted as true, directly proves the fact for which it is offered, without the need for the factfinder to draw any inferences."  Kelley, 159 N.H. at 454 (quotation omitted).  Direct evidence includes the "testimony of a person who claims to have personal knowledge of facts about the crime charged such as an eyewitness."  Id. (quotation omitted).

[¶37]  Here, there was direct evidence that the defendant caused the victim's lung, rib, spine, and nose injuries by means of more than one assault.  Both the defendant and the victim testified that the defendant delivered multiple blows to different parts of the victim's body throughout the course of the evening.  The medical providers who treated the victim testified that the victim sustained discrete injuries to her lungs, ribs, nose, and spine as a result of being punched multiple times in the chest, abdomen, and face.  Together, this testimony constitutes direct evidence that the defendant caused injury to the victim's lung, rib, spine, and nose when he struck her multiple times in different parts of her body.  A reasonable jury could base its determination that the defendant caused each injury by a separate act, not upon a presumption arising from circumstances, but rather, upon a reasonable inference based upon the direct testimony of the defendant, victim, and the medical providers.  Cf. Castine, 173 N.H. at 220 (applying the circumstantial evidence standard because there was no direct evidence, specifically eyewitness testimony to the assault or testimony from the defendant, that the defendant caused the victim's two injuries by means of more than one assault).

_____

requiring the State, in instances where it charges a defendant with multiple counts of assault against the same victim, to prove that each alleged injury was caused by a separate and distinct act.  See State v. Castine, 173 N.H. 217, 222 (2020).  Indeed, courts in other states, interpreting their criminal assault statutes, have reached a conclusion similar to ours.  See Welborn v. Com., 157 S.W.3d 608, 611-13 (Ky. 2005); Commonwealth v. Wooden, 226 N.E.3d 877, 880-83 (Mass. App. Ct. 2024).

12

[¶38]  We first consider whether the evidence was sufficient to prove that the defendant caused "a fracture to [the victim's] rib" and "traumatic pneumothorax of [the victim's] lung" — otherwise known as a collapsed lung — by separate acts.  Notably, the indictments did not specify which rib or lung was injured.  The victim's treating medical providers testified that the victim sustained multiple fractured ribs on both sides of her body and that both the right and left lungs were collapsed.

[¶39]  The victim testified that while she and the defendant were standing by the back door in the house, the defendant hit her with what she believed to be a "liver shot."  The defendant previously told the victim that a "liver shot" is used by boxers to briefly incapacitate an opponent.  The victim testified that after receiving the "liver shot," she "was instantly on [her] knees on the floor and couldn't get up for quite a while," and that "it was a very, very painful punch."  Although the defendant denied giving the victim a "liver shot," he admitted that he hit her on the right side of her body and that this blow "clearly hurt" the victim.

[¶40]  The victim then testified that, in a separate incident, while she was sitting on the loveseat with her knees to her chest "trying to protect [herself]," the defendant asked which side of her body the victim's incision from her recent surgery was located.  After the victim reminded the defendant that the incision was on the left side of her body, the defendant punched her directly on the incision, which, according to the victim, caused her to experience pain. The victim testified that after this punch, she went outside, where she was in "[e]xcruciating pain," "[m]ostly in the rib area and torso area," and her breathing was "[v]ery difficult" and "[l]abored," and she had "a hard time catching [her] breath."  The victim also testified that at the very end of the evening, when she and the defendant were getting into bed, the defendant hit her again "in [her] right ribs."

[¶41]  In addition, the doctor who surgically repaired the victim's collapsed lungs testified that the victim's injuries were consistent with an assault in which the victim was subjected to a "strong physical force" consistent with a pedestrian "being hit by a car."  No evidence suggested, however, that the victim had been subjected to a strong physical force caused by a single act, like an automobile accident.  Rather, as we have previously observed, the victim testified and she reported to her medical providers that the assault involved multiple blows to different parts of her body.  Based upon the foregoing evidence, the jury could have rationally found that it was unlikely that the victim's two collapsed lungs and eight fractured ribs were caused by a single act, and that at least one rib was fractured by a blow that did not also collapse both lungs, and that at least one lung was collapsed by a blow that did not also fracture all eight ribs.

[¶42]  We next consider whether the evidence was sufficient to prove that the defendant caused a fracture to the victim's spine by a separate act.  Two of the victim's treating medical providers testified that the victim sustained a spine fracture.  One of these same providers also testified that the victim told her that she had been "punched all over . . . punched in her head, face, chest, back . . . and abdomen."  Another medical provider testified that the victim had bruises on her chest and back.

[¶43]  The victim testified that at the beginning of the attack, the defendant hit her "[p]retty much everywhere," but mostly on her "torso, ribs, [and] legs," and that later, when she went outside, she felt "[e]xcruciating pain" "[m]ostly in the rib area and torso area."  The victim's use of the words "ribs" and "rib area" in addition to the word "torso" implies that she considered the "torso" as separate and distinct from her "ribs."  Moreover, when the victim described the "liver shot," the punch to her incision, and the punch to her right ribs when she and the defendant were in bed, she never used the word "torso."[3]  Accordingly, based upon the foregoing evidence, the jury could have rationally concluded that the defendant struck the victim's back, which caused a fracture to her spine, and that this strike was separate and distinct from the blows that caused the victim's ribs to fracture and lungs to collapse.

[¶44]  Finally, we consider whether the evidence was sufficient to prove that the defendant caused a fracture to the victim's nasal bone by a separate act.  The victim testified that when she returned to the house after running outside, she paused on the deck by the back door to catch her breath and, at this time, the defendant punched her in the nose.  The victim testified that this punch gave her a "lot of pain," that she was "[s]eeing stars," and that she "instantly started bleeding."  The defendant admitted to hitting the victim in the nose, though he maintains that he hit her before she ran outside.  From this evidence, the jury could have rationally concluded that the strike to the victim's nose — whether it occurred before or after the victim went outside — caused the nasal fracture, and that this strike was separate and distinct from the blows that caused the fractured spine, fractured ribs, and collapsed lungs.  Accordingly, viewing the evidence in the light most favorable to the State, we conclude that it was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of four separate assaults resulting in injuries to the victim's lung, rib, spine, and nose.

III.  Conclusion

[¶45]  For the foregoing reasons, we conclude that the trial court did not err when it provided a definition of "cruelty" from Black's Law Dictionary in response to the jury's question.  Additionally, we conclude that the trial court

---

[3] The "torso" includes the back of the body.  See Stedman's Medical Dictionary 2002 (28th ed. 2006) (defining "torso" as "[t]he trunk; the body without relation to head or extremities").

14

did not err when it concluded that the evidence was sufficient to sustain the enhanced first degree assault conviction and the second degree assault – extreme indifference conviction. Accordingly, we affirm on both of these grounds.

[¶46] However, we disagree with the trial court's conclusion in its March 2021 order that the evidence was insufficient to prove four separate assault convictions. Accordingly, we reverse the trial court's unit of prosecution ruling and remand for entry of the four convictions and reinstatement of the original sentences.

<u>Affirmed in part; reversed in part; and remanded</u>.

BASSETT and COUNTWAY, JJ., concurred; HANTZ MARCONI, J., sat for oral argument but subsequently disqualified herself and did not participate in further review of the case.